IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF YORK.

ARGUED AT APRIL TERM, 1844.

---

### JOHN FAIRFIELD & al. versus JOHN T. PAINE.

The return of an officer that he made an attachment of property at twelve o'clock at noon on a certain day, is to be considered prior in point of time to the return of an attachment as made on the same day, indefinitely, without specifying any particular time of the day.

When judgment has been rendered in the suit, the officer making service of the writ ought not to be permitted to amend his return, unless the record discloses something from which the addition can be made.

No amendment of an officer's return should be permitted, or allowed to have effect, when such amendment would destroy or lessen the rights of third persons previously acquired, bona fide, and without notice by the record, or otherwise.

If during the pendency of an action in the District Court, where the parties claimed under others who had respectively made levies upon the same land on executions issued on judgments of the same Court, the District Judge should direct the clerk to insert under his entry of the pending action a permission to an officer, who had years before made service of one of the writs in one of the former suits, to alter his return, and the alteration is made, this Court will, nevertheless, on an appeal determine the effect of such proceedings upon the rights of the parties.

WRIT of entry wherein certain lands in Shapleigh were demanded. The parties agreed upon a statement of facts, and that the Court might render such judgment as they would, if the same had appeared on the report of a Judge on trial of said action, and might order a nonsuit or default.

The title under which the demandants claim is thus derived. John Trafton recovered judgment against Ansel Gerrish, at the October Term of the Common Pleas for said County of York, 1838, for $2131,53, damage, and $40,28, costs, and an execution, issued on said judgment, was levied on the demanded premises and other property on Nov. 21, 1838, within thirty days after judgment, and recorded Jan. 28, 1839. The demand on which said judgment was rendered had been assigned by Trafton to the demandants on Aug. 7, 1838, and on Feb. 25, 1839, a deed of release was given by him to them. The officer's return of an attachment on the original writ, as it remained until Aug. 23, 1842, was as follows. "York, ss. May 17, 1836. I attached a quantity of mill refuse, refuse, clear boards and timber, being by estimation fifty thousand feet, of the value of two hundred dollars, and put them in the care of the within named Trafton, and also all said Gerrish's right, title and interest in and to any real estate in the county of York, and gave him a summons for his appearance at Court. Caleb Emery, D. Sheriff." In Aug. 1842, at an adjournment of the preceding May Term of the District Court, the demandants made a written motion, that Caleb Emery should have leave to amend his return by inserting the time of day when the attachment was made. By direction of Goodenow J. the following entry was made upon the clerk's docket, under the present action, then pending in the District Court. "Leave to amend the officer's return as per motion of plaintiffs on file, in vacation as well as in term time." Emery had ceased to be a deputy sheriff in 1838, and on Aug. 23, 1842, and for four or five years prior to that time, resided in the State of New Hampshire, and then and there altered the return on the writ, which had been taken from the files of the clerk and carried there, by inserting between the words *also* and *all* these words; "on said 17th day of May, 1836, at the earliest possible moment after the 16th day of May I attached."

At the September Term of the Supreme Judicial Court for said county, 1838, John Gowen recovered judgment against

the same Ansel Gerrish for $6167,00, damages, and $61,35, costs, took out his execution, duly levied the same upon the demanded premises, on Oct. 26, 1838, within thirty days after judgment, and the levy was recorded on Nov, 21, 1838. On Nov. 26, 1838, John Gowen conveyed the same premises to the tenant by deed of warranty, and the deed was recorded the same day. On May 17, 1836, Moses Goodwin, jr. a deputy sheriff, by virtue of the original writ in that action, made an attachment thereon of the demanded premises, his return commencing thus, "York, ss. May 17th, 1836. One second past twelve o'clock, by virtue of this writ I have attached all the right, title and interest the within named Ansel Gerrish has in and to the farm on which he now lives," describing it, and other real estate, and including the premises demanded.

*Fairfield & Haines, pro se,* argued : —

1. That if no amendment had been allowed or made, but taking the return as it at first stood, Trafton's attachment should have the precedence.

One second past twelve o'clock, on May 17, must be held to be immediately past meridian of that day. Trafton's attachment covers the whole day of the 17th, no hour being stated. Without the amendment, it might be unreasonable to consider the attachment as made at the earliest moment of that day ; but it would be as much so, to consider it as made at the last moment. A fair, liberal and reasonable construction of the return would seem to require, that neither the most favorable nor the most unfavorable time should be adopted, but the point between them, 12 o'clock, meridian. This would make our attachment the earliest. But if they are to be considered as made at the same time, the parties would take in moieties. *Shove* v. *Dow,* 13 Mass. R. 529.

2. But the return as amended clearly gives Trafton's attachment precedence of Gowen's.

3. The District Court was fully competent to allow this amendment, It was matter of discretion merely, and not of law, and therefore not subject to exceptions, or liable to be overruled by this Court, in whatever form the question may

be presented. That the allowing of amendments is merely a matter of discretion is settled by a long series of decisions. *Freeman* v. *Paul*, 3 Greenl. 260 ; *Clapp* v. *Balch*, 3 Greenl. 216 ; *Wyman* v. *Dorr*, 3 Greenl. 183 ; *Spear* v. *Sturdivant*, 2 Shepl. 266 ; *Carter* v. *Thompson*, 3 Shepl. 464 : *Ordway* v. *Wilbur*, 4 Shepl. 265 ; *Raynard* v. *Bicknell*, 4 Pick. 302 ; *Whitney* v. *Thayer*, 5 Pick. 528 ; *Thacher* v. *Miller*, 4 Mass. R. 413 ; Same case, 13 Mass. R. 270 ; *Mandeville* v. *Wilson*, 5 Cranch, 15 ; *Baily* v. *Musgrave*, 2 Sergt. & R. 29 ; *Johnson* v. *Day*, 17 Pick. 106 ; *Newhall* v. *Hussey*, 6 Shepl. 249. Any arguments against the impropriety or injustice of the amendment are out of place here. They should be addressed to the Court below. It would be but mockery to say to the Court below, that it had power to allow such amendments, as might be deemed just and proper, without exception or re-examination, and then adopt a course which would render such amendments entirely nugatory.

4. But if the question of amendment was now an open one, and the application was made to this Court, it would be reasonable and proper to grant it. *Gilman* v. *Stetson*, 4 Shepl. 125 ; *Eveleth* v. *Little*, 4 Shepl. 374 ; *Buck* v. *Hardy*, 6 Greenl. 162 ; and most of the authorities before cited. Paine stands no better in respect to this question, then Gowen would, as our levy was made prior to Gowen's conveyance to him.

5. But if Paine is to be regarded as a third party, still the propriety of the amendment is not thereby affected. *Haven* v. *Snow*, 14 Pick. 28 ; *Johnson* v. *Day*, 7 Pick. 106 ; *Whittier* v. *Varney*, in New Hampshire not yet published, (10 N. H. R. 291.)

6. The fact that the deputy was not in office at the time of the amendment, cannot affect its validity. *Adams* v. *Robinson*, 1 Pick. 461 ; 4 Hammond's R. 45 ; *Welch* v. *Joy*, 13 Pick. 481.

7. Nor is it affected by the circumstance, that it was done out of term time, especially as it was so done by order of Court. *Limerick, Pet'r,* 18 Maine R. 183.

*J. Shepley* argued for the tenant, contending : —

1. That as the returns of the officers were made, and as they remained until years after the present parties had acquired the rights they now have, the attachment on Gowen's writ was prior in point of time to that on Trafton's.

Goodwin's attachment on Gowen's writ was but one second after twelve o'clock at noon ; and the inquiry is, merely, whether that is not before one made at some indefinite time during the same day. Had Gowen brought a suit against Emery for falsely returning an attachment of the estate prior to that in his suit, and had shown that Emery in fact had the writ delivered to him at nine o'clock in the evening, could such action be maintained? Where the time of day is left indefinite, it must be taken as of the last moment of the day, because the return would be true, if made at any time before the day was ended.

2. No title to the demanded premises was acquired by the alteration of the return, because the permission of the Judge did not extend to an alteration unless before the Judge or the clerk ; and because a District Judge has no power to authorize a stranger in another State to alter the records of the County of York. And indeed no such alteration can at any time be made unless in open Court. The permission of the Judge, too, was a mere order regulating the trial of this suit, and was vacated by the appeal. 3 Metc. 372.

3. The alteration of the return in 1842 could not take the title to the premises from the tenant, and transfer it to the demandants, because that Mr. Paine had, years before, acquired a perfect title, as shown by the records. The return of the officer and the levy were matter of record. A deed from the debtor to Trafton, made on the 17th of May, before our attachment, and remaining unrecorded, could not have had such power. After the levy is once recorded, there is the same necessity for recording any change of title, as if the creditor had acquired it by deed. Much better would it be, that the title to real estate should pass by parol, when the parties could be heard before a jury, than that some Judge and some person who had once been a deputy sheriff, should

have the power, without reason and without a hearing, to take lands which by the records had for years been the property of the tenant, and transfer them to the demandants. If this can be done, the registry of conveyances is useless. If an alteration of the officer's return of the levy of an execution, not recorded, cannot affect the rights of others, who have looked to the record title, it is not perceived why the alteration of his return upon the writ should. And if this alteration, made after the lapse of six years, is to give the title of the demandants precedence, it is hoped some way will be pointed out, whereby the tenant can have a remedy on the sheriff, by his showing this amended return to be a false one.

4. If this had been a question between Gowen and Trafton, the creditors of Gerrish, the alteration of the return would not have been a valid amendment, because there was nothing on the original return from which an amendment could have been made; but on the contrary, the original return shows, that the alteration was not in accordance with the truth, but against it. The original return shows, that on that day the officer first attached a large quantity of different descriptions of boards and timber, and put the same into the hands of a receiptor or keeper before there was an attachment of real estate. Even the clerk of the Court cannot amend his record, unless there is something to amend by. *Limerick, Pet.* 6 Shepl. 187.

5. The alteration of the return could not destroy or injuriously affect the title of the tenant, who had become a *bona fide* purchaser of the estate from Gowen, and without notice by the record, or otherwise, of any title in Trafton or in the demandants, several years before this alteration of the return was made.

This principle, it is believed, is well settled. But few of the numerous cases on the subject will be cited. The leading case in Massachusetts is *Emerson* v. *Upton*, 9 Pick. 167. It is reaffirmed in *Hovey* v. *Wait*, 17 Pick. 19. In Maine, *Means* v. *Osgood*, 7 Greenl. 146; *Berry* v. *Spear*, 1 Shepl. 154; *Banister* v. *Higginson*, 3 Shepl. 73; *Gilman* v. *Stetson*, 4 Shepl. 124; *Russ* v. *Gilman*, ib. 209; *Eveleth* v.

*Little, ib.* 374 ; and in New Hampshire, *Bowman* v. *Stark,* 6 N. H. R. 459, are in accordance with the decisions in Massachusetts. The cases of *Haven* v. *Snow,* 14 Pick. 28 ; *Johnson* v. *Day,* 17 Pick. 106 ; *Whittier* v. *Varney,* 10 N. H. R. 291, and *Colby* v. *Moody,* 1 Appl. 111, it was contended, did not controvert this principle.

6. The effect of any amendment upon the rights of any persons other than the parties to the record which is amended, is to be determined by the tribunal before which those rights are litigated, and not by the Judge permitting the amendment.

The Court in permitting such amendment commonly acts *ex parte ;* and it would frequently be difficult, if not impossible, to know at the time, whose rights would be affected by it. But no amendment ought to be allowed without a careful inquiry, whether the effect would be injurious to others.

That the effect of the amendment is to be decided by the tribunal where the rights of the parties affected by it are litigated, was decided, directly, in *Emerson* v. *Upton,* and in *Means* v. *Osgood,* before cited, and in *Spear* v. *Sturdivant,* 2 Shepl. 263. And in cases of amendments analogous in principle, such as increasing the *ad damnum* in a writ, altering the time of holding the Court, putting a seal upon a writ, introducing a new cause of action by amendment, the effect of the alteration is to be determined by the proper tribunal to decide upon the rights of parties, when and where they are brought to trial. 3 Pick. 445 ; 14 Pick. 191 ; 13 Pick. 90 ; 17 Mass. R. 591 ; 1 Pick. 205 ; 4 Greenl. 277 ; 2 Fairf. 177 ; Howe's Practice, 391.

So far as it respects the propriety or impropriety of the act of the District Judge in granting, or refusing to grant, an amendment of any description, it may be matter of discretion, and as a mere act of discretion not subject to revision in this Court. It is however equally clear, that if the Judge has no power to grant the amendment, that his decision is subject to revision by exceptions, and will be reversed. This case is of the latter class. The Judge had no power to permit the amendment, and the act was merely void.

The opinion of the Court was drawn up by

TENNEY J. — By the return on the writ against Gerrish in favor of Gowen, the attachment of the land in controversy was made one second after twelve o'clock on the 17th day of May, A. D. 1836. The original return of the attachment of the same land, upon the writ in favor of Trafton against Gerrish, showed that it was made upon the same day as the other, without designating the precise time in the day. As the returns were, before the amendment of the latter, what was the interest of each party in the land by virtue of the levies under which they respectively claim ?

When the evidence of the official doings of those authorized to make service of writs, is required to be in their returns, the parties to the precept or process, and those holding under them, are conclusively bound thereby. Every thing which the officer is required to do in making such services must appear affirmatively, by this species of evidence. There can be no presumptions short of necessary inferences, which can supply omissions. Hence, in the return of an extent upon real estate by virtue of an execution, if the officer omits to state, by whom the appraisers were chosen, the return would be so defective that the creditor could acquire no rights thereby; notwithstanding he might be able to show conclusively by other evidence, that there had been a perfect compliance with the requirements of the statute. In the return of service upon mesne process, if the officer should omit the date, unless this defect should be cured by an amendment, or by some act of the defendant therein, a judgment rendered in that action would be erroneous, as the return would furnish no evidence, that there had been legal notice to him.

The demandants contend, that a fair and liberal construction of the return upon Trafton's writ, as it was when first made, would be, not that the land was attached at the earliest or the latest possible moment of the day, but at a moment equally removed from their extremes, which would be at noon. To admit the correctness of this proposition would establish

the principle, that all attachments which in the return thereof have no date of the hour or minute when made, must be presumed to be made at noon, which no one will contend is generally the fact. A consequence arising from this would be, that an attachment made and so returned at the earliest time, after noon, would be postponed to one made at the latest moment of the same day, if the precise time was omitted in the return of the latter. And this presumption, which it is contended will arise, is equal to the most conclusive positive proof, as no evidence to affect a return of an officer of his doings in such a case can be adduced.

An officer making an attachment may know the precise moment, when it is made; it is the privilege of a creditor to have this appear upon the return. If it be omitted to his prejudice, when required to be made, the officer is liable. But if all attachments without a more particular date than that of the day, are to be considered as made at noon, the rights of the vigilant creditor, who causes one to be made after that time, however early, and the return shows the precise moment, are to be surrendered to the one coming after him, who takes no measures to have the hour designated; and the former is remediless, for the officer, who made his attachment, has done his whole duty, and the other has made no false return.

In returns of officers, nothing is to be presumed in reference to dates, more than any other fact. A creditor has the advantage of no time earlier than that which is so expressed, as to exclude one which is later. In order to hold the property returned on another writ, it is not enough that he should show by the return, that it may have been, but that it certainly was earlier than the attachment upon the former.

The attachment was made on Gowen's writ at a fixed and certain time. That upon Trafton's, according to the return when first made, is not affirmatively shown to be at a time so early. The former must take precedence of the latter.

Assuming, that the amendment of the return upon Trafton's writ was made in pursuance of an order of the District Court, where the record was, which is denied, can that amendment

affect and change the rights of the parties now before us? The party to be prejudiced thereby is not the debtor in Trafton's execution, but the grantee of another creditor, who we have seen derived a perfect title as against the demandants, by his attachment upon the writ followed by a seasonable levy upon the execution.

It is insisted by the demandants, that the amendment was allowed in the exercise of a discretion, and therefore is not subject to revision by any other Court. It is true, that many amendments may be allowed by a Judge of the District Court, or by a Judge of this Court while sitting alone, which on consideration may appear of doubtful expediency, but if they were permitted in the legal exercise of a discretion, their propriety cannot be questioned on exceptions. But if the amendment is one, which the *law* does not authorize, it is otherwise; and the demandants are not understood as controverting this proposition. An amendment in a return of an officer, beyond the legitimate power of a Court to permit, in the exercise of a discretion, cannot take away the rights of third persons, which were perfected before any alteration took place in the return as first made. If in the trial of an action in the District Court, such an amendment should be allowed, the party sought to be injuriously affected thereby objecting, and the case should be carried up by exceptions or appeal, the legal propriety of such an amendment, and the effect thereof could certainly be considered and determined by the appellate tribunal. A contrary doctrine might leave to the aggrieved party a right of appeal, but would allow the Court appealed from, to change entirely the evidence first presented, so that the character of that evidence, and the right to change it to the prejudice of either party could not be revised. In *Emerson* v. *Upton,* 9 Pick. 167, the Court say, "We do not interfere with the rights of the Court of Common Pleas to allow the officer to alter his return; from the evidence on which that Court acted, we presume they had sufficient ground to be satisfied that the attachment was made on the 6th of March. But they did not decide on the effect of the amendment, nor could they, so

as to bind this Court upon any question arising out of the proceedings, which might affect the rights of third persons."

Cases bearing upon this question, decided in this State, Massachusetts and New Hampshire, have been cited. And the rule, which may be extracted from them, on the subject of allowing officers to amend their returns upon writs and executions so as to affect the interest of third persons, whose rights had been previously acquired, seems to be well established; if there is any difficulty it is, in its application. "Such amendments can be allowed only where there is something upon the record, by which the correction can be made, and in such cases there can be no difficulty." *Thatcher & al.* v. *Miller*, 13 Mass. R. 270. "When the subsequent purchaser or creditor, being chargeable with constructive notice, of what is on the record, if he has sufficient to show him, that all the requirements of the law have probably been complied with, and he will, notwithstanding, attempt to procure a title under the debtor, he should stand chargeable with notice of all the facts, the existence of which is indicated and rendered probable by what is stated in the record, and the existence of which can be satisfactorily shown to the Court." *Whittier* v. *Varney*, 10 N. H. R. 291. In the cases cited in the argument, unless the party, moving that an amendment may be made, or seeking a right by virtue of such, has brought himself within these principles, the amendment has been refused, or if made, it has not been permitted to prejudice the rights of third persons, previously obtained.

Was there any thing upon the record in Trafton's case from which the amendment could be made? or was there any thing therein, which could be a notice to Gowen before his levy, or to the tenant, Paine, before his purchase, that it was probable, that the attachment upon Trafton's writ was made at an earlier time than one second after twelve o'clock on the 17th day of May, A. D. 1836? The date of the return was as specific as appears in a very large majority of cases; it was perfect in itself, there being nothing indicative of any positive error or accidental omission. The fact that the service was

made on the first day of service for the next succeeding Court, does not impress us as having a tendency to render it probable, that the attachment was made before noon of that day, or that the date was not as particular as was intended. The omission of the precise time of making the attachment, in the return, is nothing from which an amendment can be made. If it were so in this case, it would be the same in all, where the year, the month and the day make the only date. Could one be aided in the least, in ascertaining the time of day, when the numerous writs on the files of this Court were served, by an examination of the returns, where the precise time is not expressed? It is difficult to perceive how the omission to state that, which is not usually stated, and which is not required to constitute evidence of a legal service, and which implies no mistake can enable the officer, who made the service, to state the exact moment, when it was made. Many circumstances, independent of the record, may call to his mind the time of day when he made his attachment, but unless the record discloses something, from which the addition can be made, the rule forbids the amendment.

If there was nothing upon the record, which could aid the officer in making the amendment, it follows that there was nothing therein rendering it probable to the mind of another attaching creditor or purchaser, that there was an omission of that, which if supplied, would entitle the creditor in that suit to hold by the attachment. But there is that upon the return itself, which renders it very remarkable that the exact time should have been omitted, if the attachment was made at the earliest time after the commencement of the 17th day of May, A. D. 1836. It was not a case where an officer had nothing to do but to sit down at his table in his own room, and make a return or a memorandum of an attachment of real estate, which may be done without going upon the land; but the officer in this case must have actually gone to the spot, where lay fifty thousand of boards, which he states in his amended return he attached and delivered to the creditor, at the earliest possible moment after the 16th of May. If it was then

thought so important, that the service should be made about the hour of midnight, and the minute and the hour were entirely omitted in the return, it implies such a degree of forgetfulness or want of care in the officer as to render it somewhat hazardous, to permit the rights of third persons to be taken away by an amendment made from his memory three or four years afterwards. No case has been referred to, in which an amendment has been allowed to prejudice the rights of third persons where the record did not give stronger indications of omission or mistake than the one in question.

It has always been the policy of the law, that the title to real estate should rest upon that evidence which cannot mislead, and which should remain unchanged by time; that it should not depend upon the frail recollection of honest men, or the false testimony of dishonest men. The statute of frauds and our laws of registration of titles to real estate are universally approved. In consequence of them, the right which has been fairly acquired, is not liable to be defeated. If a register of deeds could be allowed to make an alteration in, or an addition to the date, showing when a conveyance was recorded, years afterwards, from his memory, which he might honestly suppose did not mislead him, and thereby change essentially the titles, which were evidenced by the records, the registry would be but an imperfect security. And it is certainly no more important that such records should be exempt from the mutilation which would essentially change rights, than those which are made by other officers who are intrusted with the responsibility of fixing titles, by their returns upon judicial precepts.

It is presumed, that the amendment in the case in question was made in perfect good faith, by all who had an interest therein; but to allow it to have the effect which is claimed by the demandants, would take away the rights of the tenant fairly acquired, and overthrow the doctrine which has here for a long time been entirely settled.

*The demandants must become nonsuit.*