Anderson, J.
delivered the opinion of the court.
The original bill in this cause was exhibited for the purpose of setting aside the deed of conveyance made by Isaac Hale and Haney his wife, to their son-in-law, Isaac H. Day, as fraudulent and void as to creditors ; and to subject the lands so conveyed to satisfy the plaintiffs5 judgments. The consideration mentioned in the deed for said conveyance is $1,700. But there is a paper filed as an exhibit with the answer of Isaac Hale, which purports to be an obligation of Isaac H. Day, in consideration that Haney Hale, the wife of Isaac Hale, had relinquished to the said Day, her dower in the said lands, to maintain and support her in comfort for her natural life, in addition to the consideration of $1,700 mentioned in the deed ; and it is assigned as an error in the decree here for the first time, that Mrs. Hale was not made a party in the suit.
In general, all persons materially interested in the subject, ought to be made parties to the suit, either as plaintiffs or defendants ; whether those whose rights are concurrent With the party instituting the suit, or those who are interested in resisting the plaintiffs’ claim. ¥e are of opinion that Mrs. Hale is not shown to have any such interest. She has certainly no interest concurx’ent with the plaintiff; and the bill not seeking to subject her contingent interest of dower, she is not interested in resisting the plaintiffs’ claim. Her right of dower in the lands, should she survive her husband, or the agx’eement of Day for her maintenance and support, in consideration of her relinquishment, is not a matter necessarily, nor properly, a subject of litigation in this suit; and we are, therefore, of opinion that there is no error in the decree of the Circuit court upon this ground.
The next assignment of error we shall notice is, that *160 the decree not stating that the cause was heard upon depositions, they should be excluded from consideration ; and the answers being responsive to the bill, and denying its material allegations, it should have been dismissed- The record shows that depositions were taken ^ parties» and that both parties were present at the' taking of the depositions, and cross-examined each others witnesses ; and it appearing from the entry of the clerk, that the despositions were filed in the cause before the hearing, and the decree being evidently founded, upon the evidence, it is fair to presume that it was a clerical omission in drawing the decree, and that the cause was heard upon the depositions.
The case of Shumate v. Dunbar, 6 Munf. 480, is not very fully reported. But it was a suit against an absent defendant, and it was incumbent on the court to see that the proceedings against him were all regular and-proper; and it not appearing in the record that any notice had been given to him of the time and place of taking the depositions, either by publication or otherwise, the court would not look into them. If this were an error, it might have been corrected in the court below on motion. A decree cannot be reversed now even for want of a replication to the answer, when the defendant has taken depositions, as if there had been a replication, if or shall a decree be reversed at the instance of a party who has taken depositions, for an informality in the proceedings, when it appears that there was a full and fair hearing upon the merits, and that substantial justice has been done. Code, ch. 181, § 4, p. 743. Ve are therefore of opinion that this objection should be overruled.
The material and important question in this branch of the case is, Is the deed from Isaac Hale to Isaac H. Day fraudulent and void as to creditors ? We deem it unnecessary to go into a review and analysis of the testimony. But, after a careful examination, we are of opinion that there is no error in the decree on this point. We think *161 that the "said deed, was made with intent to hinder, delay, and defraud creditors, and that the grantor was cognizant of such intention.
"We are also of opinion, that the Circuit court did not err, in directing a reference to a master, to ascertain and report what is the interest of Elisha G. Duncan, in the property conveyed by Isaac Hare to James H. French, in trust for the wife of said Duncan ; for the interest of said Duncan, whatever it may be, is liable to the plaintiffs’ judgment against him.
It now only remains to consider the question raised by the plaintiffs’ appeal. And here we have more difficulty. James F. Hare, in his answer, says that when he purchased from Edward Hale, he proposed that he would retain a lien upon the land for the purchase money; but Hale refused, and agreed to release the land, if he would give him personal, security; and that he gave the personal security he required. That after the death of Edward Hale, he was negotiating the sale of the land to the trustees of Mrs. "Wilmoth Hare, and'in order to consummate the sale, he went to Giles Courthouse, and applied to James D. Johnston, executor of Edward Hale, to release the lien, and proposed to give additional security if he would do so ; that Johnston as executor refused, but said he would consult Mrs. Hale ; and that he soon returned, and said he had had an interview with her, and that she assented. This conduct of this defendant is 3’emarkably incompatible with his alleged agreement with Hale. He afterwards attempts to explain it, by saying that the release of Edward Hale being only verbal, and there being no witness, he thought he would be unable to establish it after his death. But' almost in the same breath he says, that Edward Hale directed George D. Hoge to have the conveyance made directly to him. Such proof would have tended strongly to prove his allegation, that Hale had agreed to release the' land ; but it was not produced, and no attempt is made *162 to account for its non-production. But if there had been such an agreement, and such proof to establish it, it is really surprising that he should have gone to the executor, and, without even mentioning such an agreement, and insisting upon it, have proposed to Mm to release the lien upon an entirely new considei’ation.
But the statement of this defendant, as to the result of the interview with the * executor, and the assurances which he gave him of the consent of Mrs. Hale to release the land upon his giving the additional personal security he proposed, is wholly irreconcilable with the depositions of James D. Johnston, Albert G-. Pendleton, Lorenzo Hale, and Mrs. Beatrice A. Hale ; so that, if his answer positively negatived the allegations of the bill, and was directly responsive, and not merely affirmative matter which it was incumbent on him to prove, unsupported as it is by any evidence in the cause, it could not weigh as a feather against such a weight of testimony.
It does not appear, therefore, that Edward Hale agreed to release his recourse upon the land. And we think it is proved beyond all question, that Mrs. Hale did not, but that she positively refused to release the land ; though she consented that additional personal security might be given, provided it should not prejudice her recourse upon the land, which she was not willing to surrender for any personal security. And, indeed, she agreed with Mr. Pendleton, who appeal’s in this matter to have acted as the counsel and agent of A. J. Hare and his wife, and their trustee, to allow the additional security tobe given, only upon his assurance, that it would not prejudice her lien upon the land, if she had any, but would rather strengthen it.
At the same time, it is very evident that Andrew J. Hare and wife, and their trustee, finally concluded the contract, accepted the conveyance which was made, and paid the purchase money, with perfect reliance upon the *163 information and assurances they had received, that the deed would invest them with a good title, and that they were entirely safe in accepting it. And yet it is a plain inference, from the evidence, that they must have known that Mrs. Hale held James F. Hare’s bonds for the purchase money, and that she claimed a lien upon the land for their payment, which she was.not willing to surrender. What was the ground of their reliance, unless it was the opinion of their counsel, which he intimated to Mrs. Hale, that she had no lien upon the land, there is nothing in the record to show. Hor is there anything in the record to show that Isaac Hare, in executing the deed of conveyance, did not act in perfect good faith, or that any culpability attaches to Mrs. Hale. If she had such a lien, or right of recourse upon the land, it is very evident that she did nothing to surrender it.
It is contended by the appellees, in the cross appeal, that no such lien existed. That is the only remaining question.
Before our statute, ch. 119, § 1, p. 567 of Code, it was well settled, that a vendor who conveyed the land to the vendee had a lien upon it for the unpaid purchase money in the hands of the vendee, or a volunteer claiming under him, or purchasers for valuable consideration with notice. Where a conveyance is made now, by the statute, the lien is abolished, unless expressly reserved on the face of the conveyance. But when no conveyance is made, the case is not within the purview of the statute, and the law is the same as it was before the statute was enacted. And in such case it is well settled « that the vendor has recourse upon the land, notwithstanding the vendee gave personal or other security for the purchase money, and notwithstanding the subsequent purchaser, or incumbrancer, had no notice that the purchase money, or any part of it, was unpaid. Yancy v. Mauck & als., 15 Gratt. 300 ; citing Hatcher’s adm’x v. Hatcher’s ex’ors, 1 Rand. 53 ; and Lewis v. Caperton’s ex’or, 8 Gratt, 148.
*164 In Beirne's ex'ors v. Campbell, 4 Gratt. 125, Camp-^ell had hut an equitable title, which he sold to Burke, and which Burke conveyed, with other lands, to trustees for the benefit of creditors. At the time of Burke’s conveyance the legal title was in Estill, which was after-wards conveyed, by the direction of Campbell, to Burke. ^ At the sale by the trustees, Beirne became the purchaser of this tract. This court held that the land was chargeable in the hands of Beirne for the balance of purchase money due from Burke to Campbell, though he had obtained the legal title, and had no notice that purchase money was due to a previous vendor. That case, we think, goes very far in support of the lien of the vendor of an equitable title—much farther than it is necessary to go in this case, to enforce the lien of Edward Hale against the purchasers from his vendee, having notice of the purchase money due him, and that his representative insisted upon her lien, and refused to surrender it for any personal security, unless the mode of transferring the equitable title, by an assignment of the title bond, makes a difference. In this case it is not averred in the pleadings, nor proved in the cause, except by recital in one of the deeds, to which the appellee, Beatrice A. Hale, was not a party, that the equitable title of Edward Hale was transferred to James E. Hare, by the assignment to him of the title bond of Isaac Hare, under which Edward Hale, by assignment, held the equitable title to the land in question. But assuming that to be the fact, has the assignor a lien upon the'land for the purchase money? It seems to be well settled, that one who sells an equitable right to land, retains a lien upon it for the consideration, when, under the same circumstances, the vendor of the legal title would have an equitable lien. The lien is recognized to the same extent in case of a sale of an equitable title as of a legal one. 1 Lead. Cases in Eq. side p. 270, top 363 ; Stewart v. Hulton, 3 J. J. Marsh. R. 178. If the vendor had *165 sold the legal title, but had not conveyed, the land would have been'charged with the purchase money, as we have seen, in the hands of a subsequent purchaser or incumbrancer, even without notice, and notwithstanding the vendor had taken personal security.
In Ligon v. Alexander, &c., 7 J. J. Marsh. R. 288, the case was this: Ogden, having title, executed a title bond for a piece of land to Ligón, who, having paid therefor, assigned the bond to Morgan, who assigned it to Alexander, with notice of the non-payment of the purchase money due from Morgan to Ligón, and of the lien asserted by the latter on the land for its payment. The court held that the land in the hands of Alexander was bound for the purchase money due Ligón. The court says: “Before any assignor can have such a lien, he must show himself to have been the beneficial owner of the property by payment of the purchase money to his vendor. With this borne in mind, there can be no difficulty in recognizing any number of distinct liens, from the first assignor to the last assignee of the bond. ” This decision is recognized in Galloway v. Hamilton’s heirs, &c., 1 Dana R. 576, (see also Stewart v. Hulton, 3 J. J. Marsh. R. 178,) in the following language: “This court has decided that the assignor of a bond for title to a tract of land is entitled to a lien on the land to secure the purchase money, notwithstanding the assignee has parted with the bond by transfer to another, provided he had notice of such lien.”
The case of Ligon v. Alexander strikingly resembles the case in hand; and it is supported by the well settled principle that the lien in case of a sale of an equitable title is recognized to the same extent as in the sale of the legal title, and is in harmony, except that it does not go as far, with Campbell v. Beirne, supra, decided by this court.
We are therefore of opinion that the decree of the Circuit- court is erroneous in holding that there is no lien *166 upon the laud sold by Edward Hale to James F. Hare, and by him sold to Dauiel Hale, trustee of Wilmoth Hare, for the purchase money due from James E. Hare to Beatrice A. Hale, widow and legatee of Edward Hale, deceased; and in dismissing the suit as to the defendants, Andrew J. Hare and wife, and her trustee, Eustace Gibson.
¡k The court is also of opinion that the said tract of land is primarily liable to the payment of the said purchase money; and that, although the decree is right in setting aside the deed from Isaac Hale to Isaac H. Day, as fraudulent and void as to creditors, the said land can only be subjected to the payment of the purchase money which was due from James E, Hare to Edward Hale for the land he sold him, and upon which he retained a lien for its payment, in case the same should be insufficient to satisfy the same, and then only for the deficiency. But inasmuch as there were other judgments against the said Isaac Hale, which charged the land, the decree is right in directing the sanie to be sold.
We are of opinion, therefore, that the decree of the Circuit court should be reversed so far as it is herein declared to be erroneous, and in all other respects affirmed.
The decree was as follows :
The court, for reasons stated in writing and filed with the record, is of opinion that the decree of the Circuit court is erroneous in holding that the tract of land sold by Edward Hale to James F. Hare, and by him to Daniel Hale, trustee of Wilmoth Hare, is not chargeable with the purchase money due from James E. Hare to Beatrice A. Hale, the widow and legatee of Edward Hale, deceased; and in dismissing the suit as to the defendants, Andrew J. Hare and his wife, Wilmoth Hare, by her trustee, Eustace Gibson, with costs; and that *167 there is no other error in said decree. It is therefore decreed and ordered, that said decree of the Circuit court he reversed and annulled, so far as it is herein declared to be erroneous, and in all other respects affirmed; and Beatrice A. Hale, appellee in the appeal of Isaac H. Bay, and appellant in the cross appeal, recover her costs in this court: which is ordered to be certified to the Circuit court of Giles county, for further proceedings to be had therein.
Decree upon Day’s appeal arrirmed. Decree upon B. A. Hale’s, reversed.