# WHEELING.

RENICK v. LUDINGTON *et al.*

Submitted June 20, 1881—Decided November 11, 1882.

(*SNYDER, JUDGE, Absent.)

1. If in a chancery cause a commissioner reports, that the lands of certain persons not parties to the cause are liable to be sold in the cause, and the court confirms this report and orders the sale of their lands, and they appeal from this decision, and the Appellate Court on their appeal hears the cause on its merits and affirms such decree, these appellants are bound by this decree as *res adjudicata*, as the Appellate Court in so deciding, must have held, that it had jurisdiction not only of the cause but also of the parties; and this judgment as well as that on the merits of the case is binding on the parties. (p. 539.)

2. But if the appeal had been taken in such case not by these persons but by some other party to the cause, neither the judgment of the court below nor its affirmance by the Appellate Court would

°Counsel below.

have bound such persons as *res adjudicata*; for in such case there would be no implied judgment of the Appellate Court, that it had jurisdiction over such persons as parties to the cause. (p. 537.)

3. In such a case, as is stated in the first syllabus, if a person's land is by the decree ordered to be sold, or he is otherwise injuriously affected by the decree but is not made a party to the cause, till after the affirmance of such decree by the Appellate Court, though such affirmance would make the decree binding on all the parties to the cause, when the decree was rendered, and also on the appellants, yet to the extent that such decree prejudiced the right of such person made subsequently a party, it must necessarily be modified, even though its modification incidentally benefited the appellants or others bound by the decree; but the modification of it would be only to those portions of the decree, that injuriously affected such persons not a party or appellant. The law of *res adjudicata* must yield in such case to the principle, that a person, who is not a party and has neither been heard or had an opportunity of being heard, can not be bound by a decree prejudicial to his interest. (p. 555.)

4. If an amended bill be filed making new parties and additional allegations, and after it is ready for hearing, on this amended bill a decree is rendered reciting, that the cause was heard on the papers formerly read, but not reciting, that it was heard on the amended bill, and the decree is such, as might have been rendered on the original bill, nothing being decided with reference to the new allegations of fact stated in the amended bill, the failure to recite in this decree, that the cause was heard also on the amended bill, can not be regarded as a clerical error; and the new parties are not bound by this decree as *res adjudicata*. (p. 532.)

5. The first five points, as laid down in the syllabus in *Renick* v. *Ludington et al.*, 14 West Va. 367 & 368, reasserted. (p. 560.)

6. If two deeds having different dates are acknowledged for recordation at the same time, in the absence of any direct proof as to the time, when the several deeds were delivered, it would be presumed, that each was delivered at the time of its date, and not that they were both delivered at the time of the date of their acknowledgment for recordation. (p. 567.)

7. A person becomes the alienee of land, under the true construction of the 9th section of chapter 139 of the Code of West Virginia, p. 666, as soon as he makes a valid contract of purchase, a contract which a court of equity would enforce, that is, either a written contract or a verbal contract accompanied by the delivery of possession, and if the contract be verbal, the date of the alienation will be not the time the contract was made, but the time possession was taken under the contract. (p. 567.)

8. If the first alience of a portion of the land liable to judgment-liens fails to put his deed of record, and a subsequent alienee, who bought another portion of said lands, liable to the judgment-liens, puts his deed of record, still the lands of such last alienee must be held liable for such judgment-liens before the lands of the first alienee.   (p. 567.)

9. The 5th section of chapter 74 of the Code of West Virginia, p. 474, providing that every deed, &c., shall be void as to creditors and purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record, does not apply to purchasers of different tracts or parcels of lands from the same vendor, but refers only to "subsequent purchasers" of the same subject as that embraced in the instrument declared void.   (p. 567.)

10. The decision and law laid down in *Harman* v. *Oberdorfer et al.*, 33 Gratt. 497 approved.   (p. 567.)

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Greenbrier, rendered respectively on the 11th day of November, 1879, and on the 16th day of June, 1880, in a cause in said court then pending, wherein B. F. Renick was plaintiff, and Samuel C. Ludington and others were defendants, allowed upon the petition of Garland Brown and F. H. Ludington.

Hon. Homer A. Holt, judge of the eighth judicial circuit rendered the decrees appealed from.

The following statement of the case is furnished by Green, Judge:

B. F. Renick in September, 1874, instituted a chancery suit in the circuit court of Greenbrier county against Samuel C. Ludington, A. W. Ludington, trustee, to whom Samuel C. Ludington had on April 8, 1874, conveyed his home place of four hundred and fifty acres in trust for the sole and separate use of the wife of the grantor, Elizabeth T. Ludington, and against sundry other purchasers of land from Samuel C. Ludington, to-wit, Wm. N. Conrell, to whom he made a deed recorded on April 24, 1874, John T. Criss, to whom he made a deed recorded April 10 and 11, 1874, Wm. H. Dunbar, to whom he made a deed recorded also April 11, 1874, Andrew Clemmons, to whom he made a deed on April 15, 1874, recorded the next day, John L. Gabbert, to whom he

made a deed recorded April 11, 1874, J. C. Ludington, to whom he made a deed recorded April 9, 1874, Robert G. Glendy, to whom he made a deed recorded April 9, 1874, George W. Carpenter, to whom he made a deed recorded April 9, 1874, William King, to whom he made a deed dated April 9, Richard B. James and George White, to whom he made a deed recorded April 9, 1874, R. H. Gillilan, executor of Joseph Miles, who had a vendor's lien on a small tract of land, which he had sold to Samuel C. Ludington and also against various other parties and their representatives, judgment creditors of Samuel C. Ludington.

The bill stated, that the plaintiff, B. F. Renick, at the October term, 1871, of the circuit court of Greenbrier, recovered against Samuel C. Ludington a judgment for four thousand nine hundred and thirty-four dollars and fifty-eight cents with interest thereon from April 20, 1871, and twenty-three dollars and thirteen cents, costs, no part of which had been paid; and in addition thereto that he had sued said Samuel C. Ludington in said court on a two thousand dollar bond, on which there was to be credited sums aggregating one thousand five hundred and forty-one dollars; that the judgment was docketed properly on December 15, 1871, when said Samuel C. Ludington owned valuable lands in said county of Greenbrier, all of which, it was alleged, were liable to the lien upon his said docketed judgments; that he had since conveyed away all of his said lands except the small tract bought of R. H. Gillihan, executor of Joseph Miles. The various purchasers were the parties above named as purchasers; and their deeds were recorded as above stated. The bill avers, that the deed for said home-place to A. W. Ludington, trustee, for the sole use of E. T. Ludington the grantor's wife, was made without consideration and to hinder, delay and defraud the creditors of the grantor, S. C. Ludington. The bill also alleged, that said Samuel C. Ludington since the docketing of plaintiff's judgment but prior to the recording of the deeds above named had conveyed lands to various other parties not named and not made parties, but whose lands, it was claimed, was bound by his judgment-lien; and if it became necessary, he reserved a right to make them all parties by amending his bill. The bill prays, that

this deed for the benefit of Mrs. Ludington may be annulled; that his bill may be regarded as a creditor's bill; that his judgment as well as the amount due him then in suit against S. C. Ludington might be paid out of the sale of his lands as well as the other judgments due from said S. C. Ludington; that the cause might be referred to a commissioner; and the proper and necessary accounts be taken; and for general relief.

During the progress of this cause an order of reference was made November 5, 1874, referring the cause to a commissioner to report, 1st, The priorities, dignities and amounts of the debts of Samuel C. Ludington, which were liens upon his lands; 2d, What judgments were docketed prior to the recording of the deeds named in the bill; 3d, What lands of S. C. Ludington or what lands heretofore owned by him are bound by these judgments against them; 4th, The order in which he has sold his lands giving the dates of the deeds and the dates of their recordation.

On October 30, 1875, Michael Fleshman filed a petition and answer setting out, that on June 15, 1867, he recovered a judgment in said circuit court against S. C. Ludington for one thousand one hundred and forty-eight dollars and thirty-nine cents with interest from March 10, 1861, and six hundred and fifty dollars costs. On June 17, 1867, he issued an execution on it, which was returned endorsed by the sheriff: "Samuel C. Ludington released by the plaintiff for any liability on this execution. See note enclosed." This note was written by said Fleshman to the sheriff dated July 9, 1867, and directed this return, as S. C. Ludington had settled the amount to his satisfaction. This petition and answer allege that this note was procured by the fraudulent misrepresentations of Samuel C. Ludington, which are set out at length; and the allegation is, that this return was procured on a fraudulent settlement, which S. C. Ludington had made, whereby by fraudulent misrepresentations he had induced him to take some pretended shares of stock, which, he said, he owned, in a certain turnpike and a claim on a certain party and his own bond for two hundred and fifty dollars in payment of this execution; that he had received first and last two hundred and thirty dollars on this bond and he surrendered it on

the representation of said S. C. Ludington, that he had paid for him, Mr. Fleshman, twenty dollars, the balance due on this bond to the sheriff on taxes due from Fleshman, but which statement was false; that he never received anything else on these choses in action assigned or pretended to be assigned to him, and they were utterly worthless, and were received only because of the false and fraudulent representations of S. C. Ludington.

These statements and representations and their falsity are set out in detail; and the evidence taken in the case shows, that the allegations are substantially true, except that in addition it was proven, that probably he had received a very small sum on the stock pretended to be assigned to him. Fleshman was made a defendant in the cause. Depositions were also taken for the purpose of showing, that the deed for the sole use of Mrs. Ludington of the home-place of four hundred and fifty acres was fraudulent, and other evidence to rebut this proof. The substance of these depositions will be stated in the opinion. On November 13, 1875, on the papers formerly read and an amended bill not copied in the record, this petition of Mr. Fleshman, depositions, and a supplemental report of the commissioner dated August 17, 1875, the cause was heard and a decree rendered. This is a long decree; but as no complaint has been made of other portions of this decree, it is only necessary here to state among many other things, which the court decided, "that the contract between said Ludington and said Michael Fleshman, whereby the judgment of said Fleshman against said Ludington was entered 'satisfied,' be set aside and annulled, and the said judgment continued in full force as an undocketed judgment, except from July 10, 1875, when it was docketed." And the court also decreed, that "the deed from Samuel C. Ludington to A. W. Ludington, trustee for Elizabeth T. Ludington, it is not a voluntary conveyance, but is founded upon a valuable consideration, and is in that regard a valid and sufficient deed;" and by this decree the cause was again referred to a commissioner. The commissioner made a report dated May 15, 1875, setting out the various judgments, eighteen in number, and their priorities and a list of the order, in which the lands were to be sold to satisfy them,

stating as a basis for the statement, "that he was governed by the date of the docketing; and he gives the amount of the judgments as of June 1, 1876." He also gives a statement of the estimated value of each tract; and in the list of the order, in which the lands are to be sold, he puts in the same class all lands in which the deeds from S. C. Ludington to the purchasers were rendered on the same day. There are seven classes. The first consisting of five tracts, the value of only three of which is estimated. Their values aggregated seven hundred and twenty-five dollars; and the deeds for them were all recorded on April 11, 1874. The second class consists of two tracts valued at four hundred and seventy-five dollars, deeds for which were recorded April 10, 1874. The third class consists of eight tracts, seven of which are valued at twenty-eight thousand eight hundred and fifty dollars, deeds for which were recorded April 9, 1874. The fourth class consists of two tracts valued at six hundred and eighty-two dollars, deeds for which were recorded April 8, 1874. The fifth class consists of three parcels of land valued at seven hundred dollars, deeds for which were recorded April 3, 1874. The sixth class consists of two parcels of land not valued, deeds for which were recorded March 30, 1874. The seventh and last class consists of one tract not valued, the deed for which was recorded March 2, 1874.

G. W. Carpenter's tract of thirteen acres valued at nine hundred and seventy-five dollars, is in the third class; A. Clemens's tract of eighty-four acres is in the sixth class; two acres of Wm. H. Dunbar, valued at three hundred dollars, is included in the first class; and the one-half acre of J. T. Criss, valued at seventy-five dollars is included in the second class. The aggregates of the eighteen judgments reported was twenty-one thousand five hundred and thirty-seven dollars and forty-two cents.

The commissioner also reports a few of the undocketed judgments according to their priorities. Those reported are five, the first of which was Joel McPherson, rendered September 1856, aggregating five hundred and ninety dollars and thirty-six cents, and the fourth of which was this judgment of Michael Fleshman, rendered June 1867, aggregating two thousand two hundred and twenty-three dollars and

forty-two cents.    These five judgments amounted to four
thousand seven hundred and eight dollars and seventy-eight
cents.    Some comments are made on the Joel McPherson
judgment unnecessary to be stated.    The commissioner in
this report gives also a statement of the proceeds of lands,
which had been sold, calculated to May 15, 1877.    They
amounted to eighteen thousand eight hundred and twenty-
three dollars and sixty-eight cents, deducting the amount
charged against these lands, which had been sold by the
commissioner.    The amount charged against them, for which
they were responsible, would leave a balance of this amount
to be paid out of other lands of six hundred and fifty-eight
dollars and seventeen cents.    In this list of lands sold by J.
C. Ludington, bound for docketed judgments, were a num-
ber of tracts or parcels sold to persons not then parties to this
cause.    The said tract of land, the home-place, of four hun-
dred and fifty acres conveyed to A. W. Ludington trustee
for E. T. Ludington, was put in the fourth class, and it was
then valued by the commissioners at thirty-seven dollars per
acre.    The commissioner in this report states :    "While your
commissioner was governed by the time of docketing in de-
termining, what judgments are liens binding the lands at the
time of the sales and still binding them, another rule con-
trolled him in the order, in which the eighteen judgments
audited and docketed must be paid; and that was the date of
the judgments."

These principles, on which this report was based, will suf-
ficiently appear from this statement of its contents and char-
acter.

Certain exceptions were filed by E. T. Ludington to this
report, not copied in the record, which were overruled; and
certain exceptions were filed by Wm. H. Dunbar and J. T.
Criss, which were sustained.    These exceptions are not
copied in the record; and we can only judge of their charac-
ter from the decree of the court; and as in the decree of the
court these debts of Dunbar and Criss were changed from the
first and second class in the order of sales to be made, to a
new class, not named in the report, just preceding the seventh
class, I infer, that the court considered, that the dates of the
deeds and not the time of their recordation was the true

time of the alienation, and fixed the order, in which they were to be held responsible for docketed judgment lien; and their deeds were dated March 31, 1874, though not recorded till the 10th and 11th days of April, 1874; and therefore I presume these tracts of land were directed by the court to be sold in a different order from that fixed by the commissioner, he having classified them by the times of their recordation.

By its decree of June 21, 1876, this report was confirmed after the modifications produced by sustaining the exceptions filed by W. H. Dunbar and J. T. Criss. The court by this decree confirmed certain sales, which had been made under a previous order of the court, and directed the disposition of the proceeds; and out of the proceeds of the purchase-money of the lands which were known as the "unsold lands," the commissioners were directed to pay the taxes, and then to pay "the judgments reported by Commissioner Withrow in favor of Joel McPherson," and then other judgments not necessary to specify. Then the decree proceeds as follows:

"It is further adjudged, ordered and decreed that A. C. Snyder and R. F. Dennis, who are hereby appointed commissioners for that purpose, after having advertised the time and place of sale for four successive weeks in the *Greenbrier Independent*, and at the front door of the court house of Greenbrier county, shall sell, at public auction, to the highest bidder, in front of the Lewisburg hotel, in the town of Lewisburg, on a credit of one, two and three years, except as to the cost of this suit and the expenses of sale, which shall be paid in cash, the lands hereinafter mentioned, and in the order herein mentioned, taking from the purchasers bonds with approved personal security for the deferred payments, each bond bearing interest from twelve months after its date, to-wit: First, eleven lots in the town of Frankford of one-fourth of an acre each sold by S. C. Ludington to John T. Criss; a lot of ten acres adjoining McMillion sold by said Ludington to Andrew Clemmons, and a lot of fourteen acres and a fraction, part of the Burdett tract, sold by same to H. P. Brown. Second, a tract of one hundred acres lying on Spring creek, in said county, sold by same to C. Fisher. Third, four hundred and fifty acres known as the home-place sold by same to A. W. Ludington, trustee for E. T. Luding-

ton; two hundred acres adjoining the home-place and the Myles land sold by same to Robert J. Glendy; thirteen acres near the town of Frankford sold by same to G. W. Carpenter; the interest of S. C. Ludington in the Stalnaker hotel property, in the town of Lewisburg, sold by him to R. B. James and George White; the one-half of three thousand two hundred acres wild land sold to Caroline Bloomer; one-half acre lot near the town of Frankford sold to Wm. King; a two acre lot and a one-half acre lot in the town of Frankford sold to J. C. Ludington; and if the lands above mentioned shall prove to be insufficient to pay off and discharge the cost of this suit and the expenses of sale, together with the judgments as hereinafter mentioned, then said commissioners shall proceed to sell: Fourth, a tract of thirty acres adjoining the lands of H. P. Brown sold by said S. C. Ludington to F. H. Ludington, and one-half of eight hundred and twenty-two acres of wild land sold by same to same. Fifth, a lot of one-half of an acre adjoining the town of Frankford sold by same to J. H. Leps; a tract of two hundred acres on Spring creek sold by same to John Pickering; a lot of one and one-half acres sold by same to J. C. Ludington. Sixth, a tract of — acres sold by deed dated March 30, 1874, by said Ludington to J. W. Hanna and Garland Brown, and a tract of eighty-four acres, part of the Sallie Hanna land, sold by same to A. Clemmons. Seventh, the two acre lot in the town of Frankford sold by same by deed dated March 31, 1874, to William H. Dunbar, and a one-half acre lot sold by same deed of same date to John T. Criss. And eighth, a lot of twenty-nine acres near the town of Frankford sold by said Ludington to Pat Shannacy.

"It is further adjudged, ordered and decreed that the following persons recover respectively from S. C. Ludington the following mentioned sums, with interest on each from the 1st day of June, 1876, till paid, which sums shall be paid out of the proceeds of the lands hereinbefore decreed to be sold, and in the following order, to-wit: 1st, John Argabrite seven hundred and nine dollars and seventy-two cents; 2d, J. H. D. Johnson, for, &c., two hundred and six dollars and fifty-two cents; these two judgments shall be subject to any credit which may be realized out of the lands heretofore

sold, known as the 'unsold lands,' as provided for in the first part of this decree; 3d, Handly and Cary, eight hundred and sixty-one dollars and eight cents; 4th, Receiver Mathews, for, &c., one thousand three hundred and fifty-nine dollars and twenty-five cents; 5th, the administrator of Wm. Perkins, six thousand one hundred and sixty-seven dollars and thirty-six cents; 6th, Handley's administrator, for, &c., eight hundred and fifty-eight dollars and ninety cents; 7th, George Livesay's executors, one thousand seven hundred and seventy-nine dollars and forty-three cents; 8th, B. F. Renick, five thousand four hundred and seven dollars and twenty cents; 9th, William Feamster, now for, &c., one thousand and eighty-five dollars and eleven cents; 10th, Wm. Boggs, for, &c., five hundred and sixteen dollars and fifty-five cents; 11th, Charles McClung's administrator, one hundred and seventy-four dollars and eighty-four cents; 12th, C. J. Bierne's executors, three hundred and ninety-six dollars and sixty cents; 13th, Erskin's administrators, for, &c., one thousand two hundred and ninety-five dollars and twenty cents; 14th, Theodore S. Bantz, two hundred and seventy-nine dollars and ninety-six cents; 15th, Almira C. Spangler, two hundred and twenty-three dollars and fifty-three cents; 16th, Jonas Coffman, thirty-three dollars and seventy-nine cents; 17th, Bell & Bright, ninety-two dollars and eighty-five cents; H. B. McDowell, ninety-four dollars and fifty-three cents—to be paid next after No. 6. But before said commissioners, Snyder and Dennis, shall execute this decree, they shall execute bond in the penalty of thirty thousand dollars, with security to be approved by the clerk of this court, and they shall report their proceedings under this decree to the next term of this court."

In this decree the lands, of a number of persons who had bought of S. C. Ludington, were directed to be sold, though they were not parties to this cause.

On November 6, 1876, the court by a decree confirmed various sales of land, which had been made by its commissioners; and directions were given as to the disbursement of the proceeds.

On the 25th day of June, 1877, the court rendered the following decree:

"This cause came on this day to be again heard upon the papers formerly read, the amended petition of Michael Flesh-man, the orders and decrees hereinbefore entered and the arguments of counsel. Upon consideration whereof, and the court being of opinion that Mrs. E. T. Ludington, wife of the defendant, Samuel C. Ludington, declined and refused to accept the provisions of the deed executed on the 8th day of April, 1874, by her said husband to A. W. Ludington in trust for her benefit, and became the purchaser of the four hundred and fifty acres of land in the said deed mentioned at a sale of the lands of the said Samuel C. Ludington made under a decree of this court in this cause at its May term, 1876, the court does not deem it necessary to decide whether or not the said deed of April, 1874, between the said S. C. Ludington and said A. W. Ludington, trustee for Mrs. Lud-ington, was made with intent to delay, hinder and defraud the creditors of Samuel C. Ludington; but the court is of opinion, and so decides, that said tract of land must now be regarded and treated as the unsold land of said S. C. Lud-ington, and that the judgment debt of said Michael Fleshman is a lien upon the same, as upon all the other unsold lands of said S. C. Ludington, as of the date of said judg-ment. It is, therefore, adjudged, ordered and decreed that said Michael Fleshman recover his judgment of two thousand two hundred and thirty-two dollars and forty-three cents with interest from the 1st day of June, 1876, as per report of Com-missioner Withrow filed in this cause the 30th of May, 1876, out of the proceeds arising from the sale of the said four hundred and fifty acres of land purchased as aforesaid by Mrs. E. T. Ludington, or from any of the other unsold lands of the said judgment debtor, S. C. Ludington, if there be a sufficient sum after all prior and unbarred judgments against said Ludington are satisfied.

"And it is further ordered that Michael Fleshman recover his costs in this suit expended."

From this decree and from the decree of June 21, 1876, S. C. Ludington, Garland Brown, H. P. Brown, John Pick-ering, Susan Hanna and J. W. Hanna, appealed to this Court; and on December 14, 1878, the cause was decided by this Court. A report of the case may be found in 14

West Va. R. p. 304. The decree entered by this Court was as follows, so far as it can now have any bearing on the present cause, as presented to us:

"The Court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel thereon, is of opinion, for reasons stated in writing and filed with the record that there is error in said decrees. It is therefore adjudged, ordered and decreed that so much of the decrees aforesaid as allows one-fourth of the judgment obtained by Joel McPherson against John E. Lewis, sheriff of Greenbrier county, and his sureties, to be paid out of the proceeds of the sale of the lands of Samuel C. Ludington in the proceedings of the cause mentioned, be and the same is hereby set aside, reversed and annulled and that the appellee Joel McPherson do pay to the appellant Samuel C. Ludington, his costs about the prosecution of his appeal in this Court in this behalf expended. And the Court being of opinion that there is no other error in said decrees, it is adjudged, ordered and decreed that the same be and they are hereby in all other respects affirmed."

This decree concluded by remanding the cause to the circuit court of Greenbrier, to be there further proceeded with in a specified manner and in accordance with the principles and directions in the opinion of this Court.

A petition was filed by the appellants for a rehearing of this cause, so far as it affirmed this decree of June 25, 1877, at a term of this Court subsequent to the one, at which the above decree of this Court was rendered. On July 9, 1879, this Court refused to entertain this petition or rehear said cause, because the application for a rehearing was made too late. This Court filed an opinion setting forth the grounds of its refusal to hear said petition for a rehearing, which is published in 15 West Virginia Reports, p. 323. In said opinion on pages 341 and 342 this Court says, "In so far as there is an apparent inconsistency or conflict between the provisions of the decree of June 21, 1876, and the decree of June 25, 1877, in the case of *Renick* v. *Ludington*, the latter must be taken as a modification of the former by the court below and both decrees being before the Appellate Court at the same time and considered and acted upon together, this

Court, in so far as it affirmed said decrees, affirmed the former as modified by the latter."

The record as presented to this Court, when it was formerly before this Court, was in many respects very imperfect. One amended bill, the first making new parties was, as we have seen, filed and the process served on the new parties, as appeared from a decree of the court; but this amended bill was not then, nor has it ever been, copied into the record, as presented to this Court. But there were copied into the record portions of a decree rendered, June 3, 1875, which refer to this missing amended bill thus: "It is further ordered, that the plaintiff has leave to file an amended bill making William Levering, William L. Armentrout, Christopher Fisher, Mary C. Gabbart, S. C. Ludington, James Withrow, trustees, as aforesaid, Cecil Clay and Caroline Bloomer parties defendants to this suit, which amended bill is filed in open court, and process is ordered to issue thereon against the defendants mentioned herein." The record now brought before us on this second appeal shows, that on the first Monday in March, 1877, a second amended and supplemental bill was filed. This second amended bill alleges, that an inspection of the record shows, that the proceeds of the sales heretofore made were not sufficient to pay off the judgment-liens reported as binding the lands heretofore conveyed by S. C. Ludington; and that it is necessary therefore to bring before the court other parties, whose lands are liable to be subjected to sale, in order to pay the balance of said judgment-liens unprovided for. This amended bill also asserts, that the commissioners' reports show, that S. C. Ludington by deed dated March 31, 1874, and recorded April 3, 1874, conveyed to J. H. Leps certain land, which said Leps by deed recorded at the same time, April 3, 1874, conveyed to John Pickering; and that S. C. Ludington also conveyed to J. W. Hanna and Garland Brown, certain other land by deed dated January 27, 1874, and recorded March 3, 1874; and all these several purchasers are made defendants to this second amended bill. All of these new defendants were duly summoned to answer this second amended bill prior to or on March 2, 1877.

The cause as to these new parties was ready for hearing

prior to the said decree of June 25, 1877, yet in the recital of this decree the cause is not stated to have been heard on this amended bill; but it would seem, that three at least of these defendants in this amended bill regarded themselves as parties to this cause and bound by this decree of June 25, 1877; for three of them Garland Brown, John Pickering and J. W. Harman united with others as appellants in the appeal from the decree of June 25, 1877.

After the return of this cause to the circuit court of Greenbrier a third amended bill was filed making Francis H. Ludington, M. Fulwider, John Littleton, James W. Johnson, administrator of Mathew Cochran deceased and his heirs, naming them, parties. This third amended bill alleged, that S. C. Luddington had purchased from W. W. Shields a tract of land in Greenbrier county; but instead of taking the deed to himself, he sold it in separate parcels to the parties above named other than Francis W. Ludington including Mathew Cochran, and the deeds were made by S. C. Ludington and wife and to W. W. Shields directly to these purchasers. The deed to Littleton was dated January 5, 1874, and recorded April 27, 1874; the deed to Fulwider was from Shields alone and was dated October 3, 1873 and recorded April 2, 1874; and the deed from Shields alone to Mathew Cochran was dated December 5, 1873, and recorded the same day. This bill also states that five hundred and fifty-three acres of this land was also sold to the defendant Garland Brown, by said S. C. Ludington; that he, his wife, and said Shields conveyed the same directly to Garland Brown by deed dated January 1874 and recorded March 3, 1874; and that the said Samuel C. Ludington had conveyed certain other lands described to Francis H. Ludington by deeds recorded respectively on April ·8, 1874, and April 9, 1874. And this amended bill seeks to subject these lands to the payment of the judgment-liens on S. C. Luddington's lands, those previously subjected being insufficient to pay all the judgment-liens.

Garland Brown in his answer filed at October rules, 1879, says, that the tract of land of four hundred and thirty-nine acres was conveyed to him and his son-in-law, J. W. Harman, by a deed dated January 27, 1874, and recorded March 3, 1874,

a certified copy of this deed being filed. He alleges, that a parol purchase of this land had been made before September 15, 1871, when, the whole of the purchase was paid; and, that they had been in possession of this land from that time having from that time complete equitable title thereto. He states, that that tract of land and others belonging to said Harman and Garland Brown and bought from S. C. Ludington had been ordered to be sold in this cause, and, that some of them had been sold; and he claims, that these decrees were not binding on them, as their rights had never been adjudicated. He claims specially, that his lands could not be bound for the Fleshman judgment, because, before he purchased any lands he searched the clerk's office and found Fleshman's execution returned satisfied by his direction; yet Ludington's lands have been sold to pay the full amount of this Fleshman debt, though he admitted the payment of two hundred and thirty dollars on this judgment by S. C. Ludington, and he claims he paid all his purchase-money before he had any notice, that this judgment of Fleshman could be resuscitated.

The answer of the heirs of Matthew Cochran states, that in payment of his land bought of S. C. Ludington, but conveyed to him by W. H. Shields, he transferred and assigned to S. C. Ludington cash paper to the amount of one thousand and sixty-three dollars and eighteen cents and gave his bond for the balance of the purchase-money, six hundred and thirty-six dollars and eighty-two cents; that this cash paper and bond were applied in payment and discharge of certain judgments against said Shields, which were liens on said land in Ludington's hands; and, that the whole purchase-money, which he paid for this land, has long since been applied to their prior lien-judgments against said Shields. They insist, that this land is therefore not liable to any of the judgments against S. C. Ludington.

A. W. Fulwider in his answer in like manner denies, that his whole purchase-money had been paid and was properly applied to pay prior judgments against said Shields and a deed of trust given by Shields on the land which he, Fulwider, had bought of Ludington; and that therefore his land was not liable to pay any judgments against S. C. Ludington.

A similar statement and defense is set up in John Littleton's answer.

Francis H. Ludington, in his answer, states, that more than fifteen years ago he bought his lands of S. C. Ludington, and that he was put into the actual possession of them and has ever since held them under his purchase, and that he paid all the purchase-money for them in less than a year after he bought, and has improved these lands and, has ever exercised exclusive, notorious and absolute control over this land; that his contract of purchase was by parol only, and he never had any written contract, and the deed to him was not made till April 4, 1874, and recorded four days afterwards. He claims, that his lands were not liable to the judgments against S. C. Ludington audited.

The commissioners of sale on October 21, 1879, made a report of their receipts and disbursements showing that they had collected twenty-six thousand four hundred and seventy-six dollars and thirty-seven cents and disbursed twenty-five thousand five hundred and ninety-one dollars and thirty-six cents, leaving in their hands eight hundred and eighty-five dollars and one cent subject to the order of the court; that there was in their hands of uncollected bonds about four thousand and one hundred dollars; and that the debts decreed to be paid but still unpaid were about eight thousand five hundred dollars, and showing that there would be a deficiency ultimately of about three thousand dollars, to be provided for by future sales; that they had paid on the Fleshman judgment one thousand one hundred and twenty-five dollars and forty-nine cents, but had ceased paying it, because notified by Garland Brown and others not to pay the balance of this jugment as, it was to be further contested. They ask instructions as to whether they shall pay the balance of this Fleshman judgment.

On November 11, 1879, the court heard this cause on the mandate of this Court, the papers formerly read, these amended bills, answers and replications thereto, this report of the commissioners of sale, a petition of Michael Fleshman then filed, depositions, exhibits and other papers filed since the last hearing, and declined, as prayed for in Garland Brown's answer, to retain the funds in said commissioners'

hands, which had been decreed to be paid on said Fleshman judgment, but by consent required him to give a bond in the penalty of three thousand dollars conditioned, that in the event it should hereafter be decided in this cause, that he is not entitled to said sum decreed to be paid to him or any part of it, which was reduced from the amount named in the decree of June 25, 1873, by nine dollars with interest from June 1, 1876, there being a clerical mistake to this amount; that he will refund the amount so decreed to have been improperly paid to him, and if he failed to give such bond, the said commissioners were directed to lend out said fund till further order of the court; and thereupon the said commissioners were ordered to pay the balance of said judgment still due to said Fleshman, and Joel McPherson was ordered to refund to them eighteen dollars and four cents which they had overpaid to him; and the cause was referred to a commissioner to settle, first, an account showing the judgments against Samuel C. Ludington, which operate as liens upon any lands aliened or conveyed by him to any of the parties to this suit, which remain upaid, giving their priorities; second, an account showing all the said lands aliened or conveyed not already sold that are bound by said judgment-liens, and the order, in which said lands, if, taken at all, should be subjected to sale for the satisfaction of said judgments. So much of the decree of May term, 1876, as directed this sale of certain lands conveyed by S. C. Ludington to F. H. Ludington, James H. Leps, John Pickering and James W. Hanna, severally was, suspended, except that on motion of F. H. Ludington the sale of such of his lands as, had already been made under said decree, and which sales had been confirmed, were again ratified and confirmed.

The depositions referred to are, first, in reference to the settlement claimed to have been made of Fleshman's judgment by S. C. Ludington. These depositions did not materially alter the cause from what it was, when the court formerly decreed said settlement to have been procured by fraudulent misrepresentations. Secondly, the deposition of Brown was taken to sustain his answer. From that it appears, not, as stated in his answer, that he searched the records and found the examination of *Fleshman* v. *S. C. Lud-*

*ington* returned satisfied but, that he says, that he called on the sheriff, and that the sheriff told him it was satisfied. The sheriff denies any recollection of any such conversation, and does not think, that he had ever had such a conversation. Thirdly, with reference to the conveyance made by S. C. Ludington of the home-place in trust for the sole use of his wife, so much of this, as is necessary to understand, what is proven in substance, will be stated in the opinion. Fourthly, it was proven that the deed executed by Shields and Ludington to Garland Brown in April, 1874, was for land, which he had bought and was in possession of in 1871. Fifth, Fulwider's deposition was taken to support the statement in his answer. And lastly, Francis W. Ludington's deposition was taken to prove the statements in his answer. These are all the depositions I deem it necessary to refer to.

The commissioner on May 12, 1880, reported setting out ten judgments against S. C. Ludington which, had been paid in full by the commissioner of sale; other judgments had been paid in part. The funds including the uncollected funds in their hands amounted to three thousand one hundred and ninety-three dollars and five cents. He then states the order, in which nine other judgments specified are to be paid. There was not funds in hand to pay any of these nine judgments except, first, the balance due R. H. Gilmore, executor of Myers, one thousand nine hundred and sixty-eight dollars and eighty-nine cents, and a portion of the judgment due plaintiff, B. F. Renick. The balance due on it was three thousand seven hundred and fifty-two dollars and thirty-one cents, of which, after applying all the funds arising from the sold lands there would still be a balance due of two thousand five hundred and twenty-eight dollars and fifteen cents yet to be provided for, as well as seven other judgments amounting to about two thousand five hundred and ninety-four dollars and sixty-five cents. These lands to be sold he reports are, first, a trust of thirty acres conveyed to F. H. Ludington; second, one-half of a tract of eight hundred and twenty-two acres also conveyed to F. H. Ludington; third, a half acre conveyed to J. H. Leps; fourth, a tract of two hundred acres sold by title bond to John Pickering. He represented that there was a

small tract of fourteen acres conveyed to H. P. Brown, which, the commissioner thinks, has not been sold. With reference to the Shields land the commissioner makes a lengthy statement, which it is deemed unnecessary to insert here; for in the judgment of this Court this order of reference was premature, and this report should not have been acted upon. Some exceptions were filed to this report. On June 16, 1880, the court made a decree overruling these exceptions and stating that there appeared to be due on certain judgments, specifying them certain sums aggregating four thousand eight hundred and forty-two dollars and seventy-one cents, as of June 7, 1880, to pay which, it ordered the sale of, first, thirty acres of F. H. Ludington; second, the undivided half of eight hundred and twenty-two acres belonging to F. H. Ludington; third, the one-half acre of James H. Leps; fourth, two hundred acres belonging to John Pickering; fifth, an acre and a half belonging to J. C. Ludington; sixth, four hundred and thirty-nine acres belonging to Jos. W. Hanna and Garland Brown; seventh, a tract of five hundred and fifty-three acres of Shields' land conveyed to said Hanna and Brown.

From this decree and the decree of November 11, 1879, Garland Brown and F. H. Ludington obtained appeal and *supersedeas.*

*Price & Preston* and *A. C. Snyder* for appellants cited the following authorities: 14 W. Va. 367; 10 W. Va. 250; 15 W. Va. 323; 6 B. Mon. 244; 28 Ill. 317; 53 Me. 110; 7 G. & J. 179; 19 Ala. 404; 17 Ill. 206; Hempst. 251; 31 Conn. 530; 5 J. J. Mar. 31; 2 Gratt. 250; 3 Rand. 511; 17 How. 239, 255; 10 Leigh 5; 6 Conn. 508; 16 Ga. 487; 17 Ohio 226; 50 Barb. 397; 9 W. Va. 690; 6 Munf. 430; 31 Gratt. 158, 173; 15 Pet. 119; 7 Leigh 224; 7 T. B. Mon. 111; 16 W. Va. 108; 32 Gratt. 657; 23 Gratt. 409; 20 Kan. 572; 6 Cal. 85; 8 *Id.* 25; 8 Mass. 240; 17 Pick. 196; 13 Ohio 220; 23 Me. 498; 6 N. H. 459; 22 Ill. 484; 5 Md. 281; 17 O. St. 635; 40 Ga. 56; 7 Cow. 434; 18 Wisc. 575; 64 N. Y. 294; 1 Sto. Ex. Jur. §§ 165, 381, 410; 18 John. 544; 44 Mo. 309; 7 J. J. Mar. 306; 2 D. & R. 556; 17 N. Y. 521; 1 Hill 438; 14 W. Va. 381; Va. L. Jour., Dec., 1880, p. 744; 28 Gratt. 401.

*William P. Rucker* for Michael Fleshman, appellant, cited the following authorities: 14 W. Va. 367; 15 W. Va. 323; 10 W. Va. 284; 22 Gratt. 669; 16 Pet. 540; 6 Leigh 399; 9 Leigh. 262; 13 W. Va. 334; 1 Va. Cas. 269.

*Alexander F. Mathews* for appellees cited the following authorities: 8 Gratt. 178; 33 Gratt. 744; 14 W. Va. 367; 15 W. Va. 323.

Green, Judge, announced the opinion of the Court:

The first question presented by this record is, whether the decree of the circuit court of Greenbrier of June 25, 1877, approved by this Court on the former appeal is conclusive on the present appellants Garland Brown and F. H. Ludington as *res adjudicata*. This decree so approved and affirmed decided, that the tract of land of four hundred and fifty acres conveyed by S. C. Ludington as trustee for the sole use of Mrs. E. T. Ludington was now to be regarded and treated as unsold land of Samuel C. Ludington, and the judgment debt of Michael Fleshman is a lien upon the same. The record shows, that by the leave of the court Michael Fleshman became a party to this cause on October 30, 1875, and that Mrs. E. T. Ludington was a party to the cause in the original bill, and the question was raised in it whether this land conveyed to her and her heirs was to be treated as sold or unsold land of Samuel C. Ludington.

On the first Monday in March, 1877, a second amended bill was filed, in which the appellant, Garland Brown, was made a defendant. The summons to answer this second bill was served on him on March 2, 1877. This amended bill repeated the allegations in the original bill. It states, that the proceeds of the land theretofore sold in the cause was insufficient to pay off the judgment-liens, which had been reported by the commissioner, and that therefore it was necessary to subject other lands bound for this judgment, which Samuel C. Ludington had conveyed to other parties, who had not theretofore been made parties, and among them were Garland Brown and six others of the appellants; and this said amended bill prays, that they including said Garland

Brown ought to be made defendants, and their lands be subjected to the payment of these unsatisfied judgments.

On the first Monday in September, 1879, another, a third, amended bill was filed, which set forth, that S. C. Ludington was the equitable owner of a tract of land, which he had bought from W. W. Shields and paid for, but which he then sold in several parcels to several parties, and the conveyances were made directly to them by Shields or by Shields and S. C. Ludington; and these purchasers are made defendants and their lands asked to be subjected to pay the judgment againts S. C. Ludington.    It also states, that Samuel C. Ludington had conveyed certain lands to the appellant, Francis H. Ludington, which were liable to the judgment-liens, which had been reported; and he too was made a defendant.    It was further alleged, that these lands also would have to be sold to pay the still unsatisfied judgment-liens against S. C. Ludington.    The summons was served on the appellant Francis C. Ludington on September 1, 1879.    After the second amended bill was filed, and the summons served on Garland Brown, this decree of June 25, 1877, was rendered.

Our first enquiry is, whether the appellant, Garland Brown, is bound by this decree, so far as it was affirmed by this Court as *res adjudicata*.    It is urged, that he is not so bound, because this decree recites, that the cause was heard upon the papers formerly read, and does not recite, that it was heard on the second amended bill, which had been filed and the summons served on Garland Brown a little more than three months previous to the rendition of this decree.    This second amended bill had then fully matured as to all the defendants to it, and the cause could have been properly then heard upon it as well as on the former papers read.

Can we regard the failure to insert in this decree, that it was heard on the second amended bill as well as on the papers formerly read as a clerical omission; or must we regard it as heard only on the original bill and the papers formerly read, and Garland Brown, the appellant, not being made a party by the orignal bill, that he should not be bound by this decree as *res adjudicata ?*    It is admitted, that a question which has been directly tried and decided by a court of competent jurisdiction cannot be contested again between

the same parties in the same or any other court, it is *res adjudicata.* See *Western Maryland Mining Co.* v. *Virginia Cannel Coal Co.,* 10 W. Va. 250; and it is admitted also that, a cause decided at one term of the Supreme Court of Appeals at which no motion or petition is made, or filed to rehear it, cannot be reheard by that Court upon its merits for the correction of errors of judgment, in the final decree of the Appellate Court at the former term. See *Renick* v. *Luddington,* 15 W. Va. 323. These propositions being undisputed it must follow that the appellant, Garland Brown, must be conclusively bound by the decree of June 25, 1877, affirmed by the decree of this Court on the former appeal, provided, this cause should be regarded as heard on the 25th of June, 1877, on the second amended bill, on which it could properly have been heard, as well as on the original bill, and other papers on which it had formerly been heard.

The counsel for the appellant, Garland Brown, relies upon the case of *Camden* v. *Haymond,* 9 W. Va. 690; and *Shumate* v. *Dunbar,* 6 W. Va. 431; as establishing, that if a decree recites that the cause came on to be heard on the bill, an answer and general replication, and an appeal is taken from such decree, though depositions which had been taken to sustain the answer are by the clerk copied into the record, still the cause will be considered as not heard on those depositions, and that, they were for some sufficient reason excluded from consideration by the circuit court. This is certainly true, under some circumstances, and from it the appellant's counsel argues, that in like manner if a cause is recited in a decree to be heard on the papers formerly read, the Appellate Court must necessarily regard it as not heard on an amended bill filed since the last decree in the cause was rendered, though the cause might be ready for hearing on this amended bill. Is this a proper conclusion from these decisions? These decisions have since been commented on and explained in subsequent cases, both in Virginia and West Virginia; see especially the cases of *Day* v. *Hale et als.,* and *Hale* v. *Hare et als.,* 22 Gratt. 146; and *Edward Turnbull* v. *The Clifton Coal Co. et al.,* 19 W. Va. p. 299, and the cases cited in them. From these cases we may deduce, that the cases of *Shumate* v. *Dunbar,* 6 Munf. 430; and *Cam-*

*den* v. *Haymond*, 9 W. Va. 690; were based on the fact, that the court had in them no evidence that the depositions constituted any part of the record except the simple fact that they were copied by the clerk in making out the record on which the appeals were allowed; and that had it appeared, that these depositions had been endorsed by the clerk in the circuit court, as filed at a time prior to the decree and they were regularly taken, on notice, and the witnesses cross-examined, and they were necessary to justify the decree that was entered, they would be considered by the Appellate Court as a part of the record on which the decree of the circuit court was rendered, though the court failed to state on the face of the record, as it should have done, that the cause was heard on these depositions.   In such case this failure would be regarded as a clerical omission in drawing the decree.

The clerical endorsement of the time when such depositions were recorded and filed, is regarded by the Appellate Court as an authorized official act.   Applying the principles to be deduced from these decisions to the case before us, there can not be a question, that the amended bill making the appellant, Garland Brown, a defendant, was a part of the record; for the entry named shows, that the amended bill was filed. Its main object was to make the appellants, Garland Brown and others defendants, and to make certain lands of theirs, specified in the amended bill, liable for the payment of the judgments against S. C. Ludington of whom they had purchased.   The decree of June 25, 1877, was rendered more than two months after the process to summons the new defendants in this amended bill had been served on all of them, and the cause was ready for hearing on this amended bill.   This decree did not recite, that it was heard on this amended bill and the decree itself was altogether in reference to subjects, which had been introduced into the cause before this amended bill was filed.   It seems to me, therefore, that on the principles, which underlie these Virginia and West Virginia cases above cited, we are bound to infer, that it was not a mere clerical error, that this decree does not recite, that it was heard on this amended bill; and this Court must regard this cause as not having been heard on this amended bill and therefore, that the new defendants in this amended

bill, Garland Brown the appellant, J. H. Leps, John Pickering and J. W. Hanna, were not bound by this decree of June 25, 1877, as *res adjudicata;* they not being parties who were either heard, or had an opportunity of being heard, when this decree was rendered.

The next enquiry is, whether or not, these defendants Garland Brown, John Pickering and J. W. Hanna, as well as F. H. Ludington, though not a party to the cause for more than two years afterwards, are not all of them bound by the affirmance of this decree of June 25, 1877, and the affirmance in part, of the decree of June 21, 1876, as *res adjudicata*, because of their uniting with others as appellants from said decrees? Decrees bind and affect none others than the parties and their privies. *Denison* v. *Hyde*, 6 Con. 508; *Brock* v. *Garret*, 16 Ga. 487; *Irvin* v. *Smith*, 17 Ohio, 226; *Yorks* v. *Steele*, 50 Barb. 397; and no parties are bound by a decree without actual or constructive notice to them. *Chambers* v. *Warren*, 6 B. Monroe, 244. *Klemm* v. *Dewes*, 28 Ill. 317; *Lawrence* v. *Rokes*, 53 Me. 110. When therefore new parties are made to a suit in equity by amended or supplemental bill, decrees made in such suit before such amended bills were filed, do not bind these new parties as *res adjudicata*; but they are open to any objection which might have been made prior to the rendition of such decrees. *Stewart* v. *Duvall*, 7 Gill & J. 179; *Bugby* v. *Robinson*, 19 Ala. 404; *Loomis* v. *Francis*, 17 Ill. 206; *Burleu trustee* v. *Quarrier*, 16 W. Va. 156–157. We therefore conclude, that neither the appellant F. H. Ludington, nor any other of the new parties were bound by this decree of June 25, 1877, nor the previous decree of June 21, 1876, when they were rendered. But, subsequently, certain of these new parties, including also F. H. Ludington, who had not been made a party at all took appeals from that decree of June 21, 1876, and June 25, 1877, which were really not binding on them; and these decrees were in certain respects affirmed by this Court on this appeal. The question thence arising and now to be decided by this Court is, are these appellants who were not bound by those decrees, that is F. W. Ludington, Garland Brown, John Pickering and J. W. Hanna, bound by the decree of this Court affirming in certain respects these decrees.

In the case of *Mosely* v. *Cocke*, 7 Leigh 294, a bill in chancery against several defendants was filed, and process issued against one not made a party defendant in the bill, and against whom there was no allegation therein, and no relief prayed, a decree was rendered against the defendants, the bill being taken as confessed against the defendant not named in the bill, and it was held, that this decree could not be held as *res adjudicata* against said defendant. This case is cited approvingly by *Newman* v. *Mollohan*, 10 W. Va. 503; and *Chapman* v. *The Pittsburg & Steubenville R. R.*, 18 W. Va. 196. In *Lyle* v. *Bradford*, 7 Mon. 111, it was decided, that a defendant never served with process is not bound by a decree in favor of the plaintiff rendered on an appeal taken by the plaintiff, even though the plaintiff proved by parol evidence that he took part in the defense of the cause, unless it was proven, that the process or some part of the record was lost. See also, *Connolly* v. *Connolly*, 32 Gratt. 657; *Underwood* v. *McVeigh*, 23 Gratt. 409–418; and *Byrne* v. *Edmonds*, 23 Gratt. 200. These cases settle the fact that if there be no allegations in a bill in any manner connecting a particular person with the transactions stated in the bill, and he is not described as a defendant, and no relief is sought against him, such person is not bound by evidence in the cause though he had been served with a summons, and on the other hand, if he is made a defendant in the bill he is not bound by a decree, if he has not been actually or constructively served with a summons, even though there be an appeal not taken by him and an affirmance of the decree, even though it be shown by parol evidence that he took part in the defense of the cause. But this case differs from those in the fact, that Gardner Brown, John Pickering, J. W. Hanna and F. H. Ludington, though situated as the person above described and therefore not parties in any manner bound by the decrees of the court below, took an appeal from these decrees their only connection with this record before being, that by a report of a commissioner their lands were liable to be sold in this cause, and by the decrees their lands were ordered to be sold, though they were not parties to the cause.

On their appeal these decrees were in part affirmed.

Should they be bound by such affirmance of such decisions by the Appellate Court? It seems to me, they ought to be so bound. It is true, that this Court had no jurisdiction to grant them an appeal, they not being parties to the cause as heard and decided by the court below, even though the record showed, that they had an interest in the subject matter of controversy. See *Gorrell* v. *Board of Supervisors*, 20 Gratt. 484. But from the failure of counsel to call the attention of this Court to the fact, that these appellants were not parties defendants, this Court in effect though not in terms, in entertaining this appeal and in deciding the cause on its merits, necessarily decided, that it had jurisdiction. For the purposes of the first trial of this cause in this Court, the jurisdiction of this Court as to these appellants, was as much determined as though this point had been made and directly passed upon by this Court, and if it was not then made it certainly can not now be questioned, as was held in the cases of *Washington Bridge Company* v. *Stewart et al.*, 3 How. U. S. R. 413; and *Clary* v. *Hoagland*, 6 Cal. 688.

It may be regarded as well settled, that if an appellate court has ever so erroneously decided, that it has jurisdiction of a cause and then proceeds to determine it on its merits, the parties to the cause are bound as *res adjudicata* by the decision of the court, that it has jurisdiction as well as by the decision of the court on its merits. See *Davis* v. *Packard*, 8 Peters 312, 323; *Skillern* v. *May*, 6 Cranch 267; *Clary* v. *Hoagland*, 6 Cal. 685 ; *Hungerford* v. *Cushing*, 8 Wis. 324; *Bank of Virginia* v. *Craig*, 6 Leigh 399; *Campbell's ex'ors* v. *Campbell's ex'or*, 22 Gratt. 649. In last case, Moncure President delivering the opinion of the court says: "In the *Bank of Virginia* v. *Craig*, 6 Leigh 399, it was held, that this court cannot examine the propriety of a decision made at a former term *interportes*, nor set aside such a decree on this ground, that it decided matters *coram non judice* at the time."

This was a case of very great hardship, a decree having been rendered by this court against a surety, who was no party to the appeal and as to whom, no decree had been rendered in the court below. The distinguished counsel for the surety moved the court, at a preceding term, to set aside the decree, and he took this position : "That though a de-

cree made in a cause or between parties before the court, which the court had jurisdiction to make, could not be set aside at a subsequent term, yet a decree made in respect to matters or parties *coram non judice*, a decree in other words, which the court had no jurisdiction to make, might be set aside at a subsequent term.    But this court overruled the motion on the ground that it could not then set aside the decree entered at a former term whether it was prematurely entered, or whether it was objectionable on its merits or not." In the language of the court in *Hungerford* v. *Cushing et al.*, 8 Wis 324 :   "The supreme court is competent to decide all questions pertaining to a case which may come before it, that of its jurisdiction included ; and such is the conclusion of that case."   In the case of *Matthews, Finley & Co.* v. *Sands & Co.*, 29 Ala. R. 140, the court says :   "Our opinion is that the sentence thus quoted from the opinion delivered when the case was formerly heard is erroneous.   But however erroneous it is we are bound to treat the former decision as the law of this case as between these parties the plaintiffs and contestants.   We do not wish, however, to be understood as deciding, that defendants in attachment or the garnishee can be regarded as a party to the former appeal or can be ever estopped by anything contained in the former opinions."

It is true, that in these cases the court of appeals had no jurisdiction of the causes and took jurisdiction of them erroneously, not because the appellants were not proper parties to the cause, but because the court itself had no jurisdiction to make any decree in such a cause as was presented. But by taking the jurisdiction and rendering the decree, however thoughtlessly it might have been done, they necessarily decided, that they had jurisdiction and all the parties to the cause were bound as well as the court itself by this implied decision, that the court had jurisdiction; it being held, that this decision implying, that the court had jurisdiction was *res adjudicata*.    But it seems to me it can make no difference, whether the want of jurisdiction is over the subject matter, or the parties.    If the want of jurisdiction be over the parties, those who were parties to the appeal must be bound by the judgment of the appellate court, that it had

jurisdiction over them, whether this be the express judgment of the appellate court, or be necessarily its implied judgment, from its taking jurisdiction over the parties and deciding on their interests. If the parties over whom, it is supposed the appellate court or the court below, have no jurisdiction is an appellant and the court, at his instance, hears and decides the cause, it must in so doing impliedly decide, that it has jurisdiction over such appellants, otherwise it could not at his instance, hear and decide the appeal. It is markedly different when there have been served with a summons, appellees who are not proper parties to the cause. The issuing of these summons is the mere act of the clerk, or even if it had been done by the direction of the court, it would not imply, that the court had decided, that they were within the jurisdiction of the court, but only, that as they might perhaps be proper parties it would be the proper course to have them summoned.

This issuing of such summons is a preliminary step to any judgments being rendered, and is not itself the judgment of the court; and, therefore, an appellee who has been improperly summoned to answer an appeal and when the court has no jurisdiction over him, because he was not a party to the suit below, is not bound by any judgments which the appellate court may render. This was decided in *Moseley* v. *Cocke*, 7 Leigh 224. But it is far different with an appellant when he presents the record to the court. The first thing for the court to do before granting him an appeal is, to determine whether he has a right to take any appeal at all; and when it grants an appeal it determines, that he has a right to the appeal as a substantial party to the controversy. And if at any time before the case is finally determined it ascertains that it has granted an appeal to a person not a party to the cause, it should dismiss the appeal as to him as improvidently awarded. But, if it does not do so and decides the cause on its merits, it necessarily decides that it has jurisdiction of the appellant, and this decision is as to him, a party to the appeal, *res adjudicata;* and binding on him and the court.

There is certainly in this conclusion no injustice or wrong done to such appellant; for he has had at his own request, a full hearing of his cause and has had a full opportunity to

present it to the court, and he ought to be held as bound by the decision of the court. My conclusion therefore is, that the former appellants in this cause, Garland Brown, F. H. Ludington, John Pickering, J. W. Hanna, S. C. Ludington, J. C. Ludington, H. P. Brown and Susan Hanna, are all bound by the decree rendered by this Court on the 12th day of December, 1878, whether they were formally or not parties to this cause in the court below before the rendition of this decree. This Court then in effect decided, that all these parties were defendants in said cause and, that this Court had jurisdiction over them. This decision may have been a manifest error, or it may have been the result of mere inadvertence, and it is not unlikely that it was, as there were more than fifty parties defendants and the Court might well have taken it for granted, without an examination of this long list of defendants, that these appellants were all of them defendants, as they by applying for the appeal represented themselves to be such defendants. Or it may have been a mere misapprehension by this Court to decide, that these parties were within the jurisdiction of this Court; nevertheless as such decision was not recalled or altered within the time allowed, it gives the law of the case in all subsequent stages of it. See *Mathews* v. *Sands*, 29 Ala. 136; *Porter* v. *Hanley*, 5 Eng. (Ark.) 186; *Haynes* v. *Meek*, 20 Cal. 288; *Bradford* v. *Patterson*, 1 A. K. Marsh. 346; *Washington Bridge Co.* v. *Stewart*, 3 How. 412–425; *Johnson* v. *Glascock*, 2 Ala. 519; *Cunningham* v. *Ashley*, 8 Eng. (Ark.) 653; *Reed* v. *West*, 70 Ill. 479–480; *Campbell* v. *Campbell*, 22 Gratt. 649–666–673; American Law Review New Series Vol. 1 No. 9 (Sept., 1880), article by Wm. Green of Richmond on *res adjudicata*, p. 612.

The counsel for the appellant argues, that our Constitution and laws do not permit one, who is not a party in the court below, to be made a party in the Appellate Court, whether by consent or otherwise. To do so would be to convert a court of exclusive appellate jurisdiction into a court of original jurisdiction. Then if one cannot be made a party in the Appellate Court by consent *a partiori*, no one who is not a party can by his mere appearance make himself a party to the suit. But the difficulty in this case is that we have not

held, that he became a party by his mere appearance. Whether he would have been we have not decided. As I understand it, he is a party to this cause for a far different reason. Because this Court in acting on his petition for an appeal presented to it by him, as a party, and entertaining jurisdiction of his appeal and deciding the case on its merits, necessarily decided, that he was a party and we had jurisdiction of the case.

M. Fulwider, Mathew Cochran's administrator and heirs and John Littleton, were not made defendants in any manner, in this cause, for more than two years after the decree of June 25, 1877, was rendered, nor till after it was affirmed by this Court; and not having been appellants from said decree they cannot be bound by it nor by its affirmance by this Court. Neither can J. H. Leps, be bound by this decree or its affirmance, as he was first made a party to the cause by the second amended bill, being served with process to answer it February 27, 1877. And the cause was not heard on this amended bill till after the affirmance of said decree. Nor is Pat Shannacy bound by said decree nor by any other decree in the cause, as he is not now nor has he ever been made a party to the cause.

It is therefore necessary for us to consider so far as these parties are concerned, the questions decided by the circuit court and affirmed by this Court on the former appeal, so far as these parties have an interest in these questions, and so far only. The first of these questions is, whether the four hundred and fifty acres of land conveyed by S. C. Ludington, to A. W. Ludington, in trust for the sole use of the grantor, should be regarded as unsold land. It was so regarded by the circuit court in its decree of June 25, 1877, for the reasons expressed on the face of the decree, that she had declined and refused to accept the benefits of this deed made April 8, 1874; and because she had purchased this four hundred and fifty acres of land, in the said deed mentioned, at a sale of the lands of Samuel C. Ludington, made under a decree of this Court in this cause at its May term 1876; and therefore the court did not deem it necessary to decide, whether or not the said deed of April 8, 1874, between S. C. Ludington and A. W. Ludington, trustee, for Mrs. Ludington,

was made with the intent to delay, hinder and defraud, the creditors of Samuel C. Ludington; but the court was of opinion and so decided, that said tract of land, must now be regarded and treated as the unsold land of S. C. Ludington.

The reason here assigned for this tract of land, being treated as the unsold land of S. C. Ludington, seems to me to be untenable. The record so far from showing, that Mrs. E. T. Ludington, declined and refused to accept the provisions of the deed of April 8, 1874, to a trustee for her benefit shows, that she did accept the provisions of this deed of trust. In her answer in this cause she insists upon the validity of this deed, in trust for her sole use and claims the benefit of its provisions. The fact, that it was certainly liable to be sold to pay the judgments against her husband the grantor, which were duly docketed when this deed was made; and that it had therefore been ordered to be sold by the court in this cause and she had become the purchaser at such sale, certainly can not change the case. This was no declination or refusal to accept the provisions of this deed; and in fact she could not then have declined to accept it, when she accepted it formerly, if the deed was not fraudulent and void, it becomes operative as a deed, and this effect of it could not be changed by any option of her's even had she desired to render it ineffective.

The fact is, that after paying the judgment-liens for which it was bound and the debts of her husband, that she assumed to pay when this deed was executed, that she really would have derived no sort of benefit from it. There were good reasons why she should have originally refused to accept the provisions of this deed for her use. But she did not regard them as such, and she did as we have seen, not only accept this deed, but insisted upon it being held valid in her favor. And the circuit court had no right to regard this land as still the land of S. C. Ludington, her husband, unless the court held the deed as void and fraudulent. This Court on the appeal decided, that while this was certainly irregular, yet as neither Mrs. E. T. Ludington, nor her trustee, complains of these proceedings; and as it seems no one else is prejudiced thereby, the decree ought not to be reversed for

such irregularity in declaring, that this land was to be regarded and treated as unsold land of S. C. Ludington.

The purchasers of the other lands, this Court then said had no right to complain of it, as there is a larger fund thereby produced, to pay the undisputed judgments.   See 14 W. Va. p. 382.   It seems to me that, this is insufficient to justify the affirmance of this part of this decree.   For though some of the purchasers of other lands might not be prejudiced by such affirmance yet, some of them would and, a portion of the judgment-creditors of S. C. Ludington, would be prejudiced thereby.   If this four hundred and fifty acres of land, were to be regarded as unsold land of S. C. Ludington, the distribution of its proceeds would be materially different from what the distribution would be if it were regarded as sold lands; and some of the purchasers of real estate from S. C. Ludington, would also be much prejudiced by this change in the distribution of it, produced by treating their land as unsold land.   We are therefore necessitated to enquire whether, this deed was made to delay, hinder and defraud, the creditors of Samuel C. Ludington; an inquiry which the court below in this decree waived.   If this be the real character of this transaction, then this deed is void as to creditors, and the court properly regarded this tract of land as unsold land.   But otherwise it erred in so regarding and treating this land.

The facts in connection with the execution of this deed, as shown by the record, are, that Mrs. E. T. Ludington, was the daughter of Jeremiah Tracey, who died on July 18, 1871, and left two children, J. J. H. Tracey and Mrs. Ludington, who was married to S. C. Ludington, in April 1852.   Her father left considerable property for distribution; her share of her father's estate was some nine or ten thousand dollars. Her brother qualified as his administrator.   On August 7, 1871, he paid to Samuel C. Ludington, in the presence of his wife, three thousand nine hundred and forty-five dollars in cash as a part of her distributive share, and he took their joint receipt therefor.   On August 28, 1871, he paid to S. C. Ludington in like manner, and took a like joint receipt, for four hundred and forty-five dollars.   And he paid three hundred dollars on a bond due from her husband by an order

signed by his sister, Mrs. Ludington.    And on October 24, 1872, as a part of his sister's distributive share, he surrendered to S. C. Ludington, his bond to the intestate, amounting then to three thousand five hundred and sixty-two dollars and eighty-two cents, and took his receipt therefor. Mrs. E. T. Ludington never had any separate estate except, that which she became entitled to by operation of law on the death of her father.

In 1873 her brother, as administrator of her father, paid her four hundred and fifty dollars.    These payments, which were made by him to her husband, were made in her presence and with her approval, and a joint receipt was taken and signed by both of them; but no bond or note was taken by her from her husband, and her brother, whose testimony was taken he states nothing else as occurring when these payments were made, than the simple taking by him, of their joint receipts, and the payment to her husband of the moneys in her presence.    He does not state, that anything was said at the time of these transactions, about this money being loaned by her to her husband, or of any promise or agreement by her husband, to secure the re-payment of these moneys to her in any manner.    When her father died, her husband S. C. Ludington, was largely indebted, there being judgments against him then to the amount of about eleven thousand dollars.    And after her father's death and before the making of this deed in trust for her use, there were additional judgments rendered against him for about an equal amount.    He possessed a large amount of property, but not an amount sufficient to pay his large indebtedness.    When the deed was made on April 8, 1874, S. C. Ludington, stated to the scrivener, that he had sold the home-place of four hundred and fifty acres to his wife and wanted to execute a deed for it to her; he was told he could not make a deed directly to her without the intervention of a trustee, and then by his direction the deed was drawn conveying this four hundred and fifty acres to A. W. Ludington, as trustee, for the sole and separate use of his wife; and she at the same time signed and sealed a paper, agreeing to pay the balance of a certain decree against her husband amounting to nearly four thousand dollars.    The other debts of her husband amount-

ing to six hundred dollars, and on a bond of her husband to her brother, for three thousand dollars with two years' interest, then due upon it amounting to three thousand three hundred and sixty dollars. The entire amount of debts thus assumed to be paid by her, being nearly eight thousand dollars.

This deed recited as its consideration ten dollars in cash, but this obligation of Mrs. E. F. Ludington, to pay these debts of her husband, was a part of the consideration and he, S. C. Ludington, then stated, that a part of the consideration was money he owed his wife, which her father had advanced in his lifetime, together with what he had gotten from the administrator of her father on account of her distributive interest in her father's estate. These advances made in her father's lifetime, as shown by the deposition of her brother the administrator, were two thousand five hundred dollars in money and negroes in 1853 and a bond of S. C. Ludington, dated June 9, 1860, for two thousand and twenty-four dollars, surrendered to him by the administrator October 24, 1872, and above spoken of. The land, four hundred and fifty acres, conveyed by S. C. Ludington, to a trustee for the sole use of his wife on April 8, 1874, was worth about twenty thousand dollars. Now a wife may dispose of her separate personal estate in any manner she chooses. She may apply it to the payment of her husband's debts, or if she chooses, she may give it to her husband. *Bennett et al. v. Harper's Ex'ors*, 20 Gratt. 486; *Patton v. Merchants Bank of Charleston*, 12 W. Va. 587. The real difficulty in most cases, is to determine on the evidence, whether the wife has made a gift or loan to her husband, or whether he has held her money only as her agent. The mere receipt of money belonging to the wife by the husband with her knowledge, does not of itself raise a presumption of its being a gift; when such receipt is not the mere interest on the money, but the principal. *Towers v. Hagner*, 3 Whart. 48; *Johnston v. Johnston's Administrator*, 31 Pa. St. R. 454. When he obtained her money with her consent it is at most but very slight evidence of a gift, and it is repelled if notes are taken for the money at the time, or soon after it was received. *Grabill v. Moyer et al.*, 45 Pa. St. R. 530; see also *McGinnis v. Curry*, 13 W. Va. 64 to 68.

On these principles ought the sum of money three thousand nine hundred and forty-five dollars, which her brother the administrator of her father, in the presence of Mrs. E. T. Ludington, in July, 1871, and for which they executed a joint receipt, and the four hundred and forty-five dollars paid in a like manner August 28, 1871, to be regarded as a gift from the wife to the husband, or as a loan by her to him. No notes or bonds were given for these sums, which would have been most natural had it not been intended to be a gift; and nothing is said by the brother, the only person present, to indicate, that it was even expected to be returned or secured in any manner. Yet nearly three years afterwards when he was much more involved, and when as shown by the evidence he was apprehensive, that all his property would be swept from him by his creditors, he deeds his home to a trustee for the sole use of his wife and these large sums, apparently given to him years before by his wife, were treated as though they were debts he owed her and were regarded as a part of the consideration of the land conveyed. And so too was the two thousand five hundred dollars received of her father, by her husband, shortly after her marriage and as far back as January 3, 1853. This was obviously no debt, for this money and negroes were not her separate estate, but though given to her as the law then was, her husband had a right to take them as his absolute property.

These large sums and especially this two thousand five hundred dollars, with more than twenty years' interest, making an average of more than five thousand five hundred dollars, was thus improperly treated as a debt due from her husband to her; and this four hundred and fifty acres of valuable land, was conveyed to her in part, in satisfaction of this pretended debt. The only valuable consideration really paid for this land, was the undertaking to pay debts for her husband, amounting to eight thousand dollars and perhaps the sum of three thousand five hundred and twenty-six dollars and eighty-two cents, the bond of her husband to her father including interest to October 24, 1872, at which time this bond had been surrendered to her husband by her father's administrator as a part of her distributive share. Thus all that could with any propriety be called a considera-

tion for this four hundred and fifty acres of land, would not exceed twelve thousand dollars, and yet this tract of land was then worth twenty thousand dollars.

It is true her husband, S. C. Ludington, does depose, that he agreed to deed her this land for her use in consideration of the money belonging to her, that he was receiving from her brother as her father's administrator. And when he ascertained he was so largely in debt he required her in addition, to assume the payment of this debt of his, which she did assume. But he was incompetent to testify as a witness in this case, for his wife by reason of the fifth exception to the 23d section of ch. 130 of our Code. See *Zane* v. *Fink et al.*, 18 W. Va. p. 743, 744, 745. In her deposition Mrs. E. T. Ludington, testified that, "whatever money was coming to her from her father's estate Mr. Ludington got, and I was to get this land for it and pay six thousand dollars on debts against Mr. Ludington." She further says, "I loaned this money to my husband. He used my money after he was broken up; he agreed to let me have the home-place for the money he had used of mine, and required me to pay six thousand dollars on debts of his, which were specified in a written agreement executed by her to her husband." She admits that, he did not execute any bonds to her; that she recollects when he got the money, she permitted him to use this money and that the conveyance was made to secure a home.

It seems to me from her own statement, that it is reasonable to infer that her husband with her consent, used this money which was coming to her from her father's estate; and that afterwards it was regarded by them as a loan. The amount however, including the debts she assumed to pay, was an inadequate consideration for the farm; and as stated by her husband to the scrivener of the deed when it was being written to make the consideration what her husband had received of her father in his life-time, was also treated as a debt, that is the twenty-five hundred dollars in negroes and money received in 1853, which was a palpable wrong to his creditors. But if we take Mrs. Ludington's statement in connection with the statement of her brother, the administrator, it seems to me that when S. C. Ludington received this money of her brother, in her presence, he received it as

a gift from her, and that none of the parties at that time regarded it as a loan, or contemplated that it was ever to be returned by him. The statement too of Mrs. Ludington, is also much weakened by its non-accordance with her statement of the consideration of this deed set out in her answer. She there says, " She received various payments from her brother, as administrator of her father, and permitted her husband to use the same with a distinct agreement with him at the time, that he should settle upon her his home tract of land aforesaid in consideration of such advances and some assumption of other debts due from him. All these advancements, loans, payments and assumptions (which are specified) were made with the distinct understanding that she was to have settled upon her the tract of land aforesaid." And she in this answer further says : " She united and had agreed to unite with him in conveying her contingent right of dower in all his sold lands, consisting of many valuable tracts, with the further assurance, that she should be compensated therefor in the settlement of the home place upon her." These allegations in her answer, not made on oath, if they had been proven would have established, that this home place was conveyed to her for a valuable and adequate consideration. But, in her deposition she falls far short of sustaining these allegations. There is no proof, that she executed the various deeds with her husband for land sold by him on an agreement, that she was to be compensated for so doing. Nor does she prove that when these moneys of hers were received by her husband, it was with the distinct agreement with him *at the time*, that he should settle upon her this home tract of land. She herself disproves this statement as I understand her evidence; and the facts proven taken in connection with the deposition of her brother makes it appear to me, that when her husband received these moneys of hers, they were received by him in her presence as gifts to him and not as loans.

While therefore this deed from S. C. Ludington, to A. W. Ludington, trustee, for the sole use of the wife of the grantor, was not purely voluntary it was nevertheless a conveyance made for a very inadequate consideration, and with intent to secure a home to S. C. Ludington and his wife, and to delay,

hinder and defraud his creditors. I have not commented on the testimony of two witnesses who state, that they heard Mr. and Mrs. Ludington say, that she had loaned him the money with the promise, that he would secure her the home-place; because I regard them of very little importance as it does not appear, when these statements were made, whether about the time he used the money or about the time he made the deed. And her own deposition shows it seems to me clearly, that it was not contemplated when he received these moneys, that he would in consideration of them convey the home-place to her. Her language is: " He used my money. After we was broken up he agreed to let me have the home-place for the money he had used of mine." She here states, as I understand her, what was doubtless the truth, that this agreement to let her have the home-place did not precede his getting her money, and was not made till just before the deed for her use was made.

It is obvious therefore, that this promise or agreement to let her have the home-place did not precede or accompany the receipt of the money by him; and was not made till long afterwards when he was broken up and was about to execute this deed to save a home to himself and wife. My conclusion therefore is, that the court in its decree of June 23, 1874, did not err in regarding and treating this four hundred and fifty acres as unsold land of S. C. Ludington. This deed of it was made for an inadequate consideration and made to secure him a home and delay and defraud his creditors; and it was proper in the court to subject it to the payment of his debts precisely, as if it had been unsold and unconveyed. There is no doubt but that with her consent he had used a considerable amount of his wife's funds; but in their improvidence they neither of them regarded it or treated it as anything but a gift from her to him, till he became so hopelessly embarrassed, when it was conceived, that by treating it as a debt it might be regarded in part, as the consideration for this deed of the home-place to a trustee for her sole use. However just she may have and may still regard this, in law it is a fraud on his creditors and the deed void as to them.

The decree of June 25, 1877, also affirmed, that the

judgment debt of Michael Fleshman, was a lien on the unsold land of S. C. Ludington, and the circuit court of Greenbrier, has again, in the decrees now appealed, acted on this assumption as it had been affirmed by this Court on the former appeal.    But in this respect this affirmance of this decree of June 25, 1877, is not binding on the appellants, above mentioned, who have been made parties since and who were not appellants formerly.    And it is therefore necessary now to determine, whether this Fleshman judgment is a lien on these unsold lands of S. C. Ludington. Since the decision of this Court in the former appeal, some additional testimony has been taken in reference to the question, whether the order by Fleshman to the sheriff to return this execution satisfied, was fraudulently procured; but they do not change, materially, the case as proven when this cause was formerly before this Court.    Our conclusion is still as it was when the case was formerly before us, that the proofs show that "the agreement of Fleshman with Ludington, to prove the execution on his judgment returned satisfied, was procured by the misrepresentation and fraud of S. C. Ludington."    There has been an attempt to prove since the return of this cause to the circuit court, that Garland Brown, was actually mislead by this when this execution, of which he was aware when he purchased land of S. C. Ludington.    But he was an appellant when this cause was formerly before this Court, and when the decree of June 25, 1877, deciding, that despite this return this judgment of Fleshman, was a lien on the land of S. C. Ludington, was affirmed, and as to him this question is *res adjudicata*.    It is not so, however, in reference to other parties made defendants since said decree of June 25, 1877, except H. F. Ludington, who appealed from it, and though they are not bound by this decree as *res adjudicata*, yet he is bound by the decree of this Court affirming this decree on an appeal taken by him and others.

We must therefore determine, how far these other purchasers, not then parties to this cause are concerned, whether this Fleshman judgment, was as against them, liens on the lands of S. C. Ludington, after this return of the execution on it as satisfied had been fraudulently procured.    There

was no evidence taken in behalf of any of them, though the deposition of several of them were taken, which in any way tended to show, that when they made their purchases they were aware that any such return was made or were in any way mislead by it. Nor does H. F. Ludington, make any allegation or proof, that when he purchased he was aware of this return or was mislead by it.

Under these circumstances this Court formerly concluded and decided that this Fleshman judgment, as against such purchasers, was still a lien on the lands of S. C. Ludington, despite such a return so procured. See 15 W. Va. R. p. 379, 380 and 381. But this decision is not binding on parties, who were not then before this Court. And this question has been again ably argued by counsel on this appeal. In the former argument of this cause on this point, the case of *Page* v. *Benson*, 22 Ill. 484; was referred to and this Court by its opinion admitted, that it was an authority that such a return necessarily discharged the lien on the lands of the defendant in the execution. But it regarded this probably, as the effect in Illinois, because it was believed, that in that State executions are by statute law levied on lands, and the lands sold under execution. The lien then being the result of the execution, then when it was returned satisfied it necessarily discharged the lien as such return destroyed the execution. But as in this State an execution cannot be levied on lands, and the lien of a judgment on lands in this State is created directly by our statute and is in no manner dependent on the issuing of an execution. Therefore the return or destruction of the execution does not destroy the lien of the judgment, unless there has been really a satisfaction of the execution or judgment, or unless it is shown that a purchaser was deceived or mislead by such return of the execution. After a review of the reasoning of Judge Johnson on that point in 15 W. Va. R. 379 to 381; we conclude that it is sound and cannot be effectively unanswered.

The counsel in their argument now refer to a number of decisions to sustain the position, that the amendment by a sheriff of his return on processes, will not be permitted to affect injuriously the rights of third persons, which have attached in the meantime upon the faith of the verity of the original return. These authorities are referred to by counsel to

sustain their position: *Smith* v. *Martin*, 20 Kan. 572; *Newhall* v. *Provost*, 6 Cal. 85; *Webster* v. *Haworth*, 8 Cal. 25; *Williams* v. *Brackett*, 8 Mass. 240; *Hovey* v. *Wait*, 17 Pick. 196; *Ohio Life Co.* v. *Urbana Co.*, 13 Ohio 220; *Fairfield* v. *Paine*, 23 Me. 498; *Bowman* v. *Stark*, 6 N. H. 459.

These authorities have been examined and they seem to me to throw no light on the question before us. There has been no amendment of the return on the execution, nor on any other process; nor have any rights of third persons attached since the return made by the sheriff, *upon the faith* of the *verity* of the sheriff's return. Had these purchasers of the lands, of S. C. Ludington made their purchases on the faith, that this return of the sheriff was true, then as has been stated it might be, that the liens of Fleshman's judgment might have been held as of no effect against such purchasers who had been mislead by such return to believe, and on its faith did believe, that this Fleshman judgment had been discharged. If these had been the facts these authorities would be pertinent. But in this case, it is not even contended much less proven, that any of these purchasers, other than Garland Brown, were mislead by this return or this execution or had any knowledge of any such return having been made when they purchased. In the case of *Page* v. *Benson*, 22 Ill. 484 it was decided, that a judgment creditor who enters satisfaction of his judgment, or causes an execution to be returned satisfied, authorizes others to treat the property of the debtor as released from the lien incident to the judgment. And counsel refers to *Parker* v. *Sedwick*, 5 Md. 281; *Wright* v. *Fitzgerald*, 17 Ohio St. 635; *Lea* v. *Yates*, 40 Ga. 56; *Packard* v. *Hill*, 7 Cow. 434; *Flanders* v. *Sherman*, 18 Wis. 603; as sustaining the same proposition. I have examined these various cases, they seem to me to fall far short of sustaining the point claimed. The case of *Parker* v. *Sedgwick*, 5 Md. 281, simply holds, that the return of a sheriff on a *fieri facias* is *prima facie* true. *Wright* v. *Fitzgerald*, 17 Ohio State 635, seems to me to have no bearing on the proposition it is supposed to sustain. And the same may be said of *Lea* v. *Yates*, 40 Ga. 56, and *Flanders et al.* v. *Sherman et al.*, 18 Wis. 603. In *Packard* v. *Hill*, 7 Cow. 434, a point was decided similar to that in *Parker* v. *Sedwick*, 5 Md.

281. As to the case of *Page* v. *Benson*, 22 Ill. 484; it was commented on in the opinion rendered by Judge Johnson, 14 W. Va. p. 379; and for the reasons I have stated, I deem it inapplicable to cases arising in this State, because of the diversity in the statute law of Illinois and of this State in reference to the liens of judgments or executions there on lands.

It is true as claimed by counsel, that when a valid subsisting debt has been discharged by an illegal security, it may be revived upon said security being declared illegal, but such revival can only be enforced subject to any intervening equities of these persons that have come into existence between the discharge and revival of the debts. See *Patterson* v. *Birdsall*, 64 N. Y. 295; 41 Story's Eq. Jur. §§ 165, 381. But in the case before us there are no intervening equities, for the subsequent purchasers were uninformed as to this return made by the sheriff on this execution, and were not mislead thereby to make this purchase.

In my judgment this return did not have the legal effect of destroying the lien which the statute gave to Fleshman's judgment, on Ludington's lands, unless it was true the judgment was paid. And these purchasers of these lands who were not mislead to their injury by this return, have no equity as against Fleshman; and therefore cannot ask a court to set aside this lien of Fleshman in their favor, because of the mistake he was induced by fraud to make in directing this execution to be returned satisfied. Had the purchasers shown, that thereby they were mislead and damaged, the case would be different.

There is however, one palpable error in the decree of June 25, 1877, to which the attention of the circuit court was not called, nor the attention of this Court when the appeal was formerly before this Court. That is the entire amount of the judgment of Michael Fleshman is regarded as due and is ordered to be paid out of certain proceeds of land in the hands of the commissioners; and in fact by a clerical error the amount so adjudged to be due him was nine dollars as or June 1, 1876, more than his entire debt as was afterwards discovered and corrected in the decree of November 11, 1879. Now Michael Fleshman in his answer admits, that he had

received two hundred and thirty dollars on this debt. He does not state definitely when, but it is more than likely it was not very long after July 9, 1867, that he recovered this two hundred and thirty dollars. This credit by a mistake was not allowed in the report of the commissioner of May 30, 1876. And the mistake not being then observed the report was not excepted to on that account; and thus this error was introduced into the decree of June 25, 1877. This decree was affirmed by this Court, our attention not being called to this mistake. Perhaps we could not on the former appeal have corrected this mistake had we discovered it, as the commissioner's report in which it occurred was not on this account excepted to by any one. But it can now be properly corrected because this decree of June 25, 1877, and its affirmation cannot as we have seen be regarded as res adjudicata, and binding, for that reason, on the purchasers of lands from Ludington, other than the appellants who were not made parties till long after the affirmation of this decree of June 25, 1878, by our Court. Though it is binding on the appellants, as well as all others, who were then parties to this cause and decree. But if the whole of this Fleshman judgment is paid out of the proceeds of this four hundred and fifty acres of land, as this decree orders, it must inflict a loss of just that amount of this error in its amount on the purchasers of Ludington's lands, who were not made parties to this cause till 1879; as they will be thereby required to pay out of their lands an additional sum beyond what they are really bound for, equal to the amount of this error. And not being bound by this decree of June 25, 1877, nor by its affirmance by this Court as res adjudicata, this loss cannot be imposed upon them.

The only difficulty I have had upon this question is, that upon the return of this cause to the circuit court the only party who raised an objection distinctly to the amount of this Fleshman judgment, as it had been adjudged by the decree of June 25, 1877, was Garland Brown; and he had no right to demand its reduction as he was bound by this decree of June 25, 1877, as res adjudicata. But the answer of Mr. Fleshman admitting, that he had been paid a part of this judgment and it being apparent, that to order the payment of the whole of

it as was done by this decree of June 25, 1877, would neces-
sarily injure and prejudice the rights of persons, who were
not parties to this cause when this decree was rendered, and
not appellants from it; and therefore not bound by it as *res
adjudicata* it became the duty of the court, in justice to them,
to ascertain by a reference to the commissioner, the real
amount due on said judgment; not only by correcting the
clerical mistake as to the amount of this judgment, occurring
in this decree of June 25, 1877, but also by a reference
to the commissioner of the cause to ascertain what credits
should be placed on it by reason of payments made to S. C.
Ludington at any time whether before or since said decree of
June 25, 1877, and by whomever made, whether by J. C.
Ludington or the commissioners of sale in this cause.

This doctrine of *res adjudicata*, as we have stated it, is
almost axiomatic.   There must be an end of litigation and
how it could ever well end, if the decision of the highest
Appellate Court could be indefinitely reviewed and disre-
garded, by either the inferior court or by the Appellate
Court itself, is difficult to conceive.   Accordingly then, princi-
ples of *res adjudicata* are firmly incorporated in the juris-
prudence of every · civilized nation.   The pertinacity with
which they are upheld, despite the wrong it may occasionally
inflict on individuals, abundantly appears from this article in
the American Law Review above referred to, and the numer-
our cases there cited.

But however necessary it is that this doctrine shall be
upheld with a firm hand yet, it can not be permitted to over-
throw or destroy another fundamental principle, still more
fundamental and axiomatic, and of which, Judge Christman,
in his opinion in *Underwood* v. *McVeigh*, 23 Gratt. 418, thus
speaks:  " It lies at the very foundation of justice, that every
person who is to be affected by an adjudication should have
an opportunity of being heard in his defense, both in re-
pelling the matters of fact and upon matters of law."   And
he states, that this has well been thus expressed, " We take
it to be an indisputable principle especially inherent in every
intelligent system of jurisprudence, that every person who is
bound by a proceeding to which he is no party, and had no
opportunity of becoming a party, or of making a defense,

and in which he is unrepresented, must if he had such an interest in the subject as required or authorized him to be made a party be entitled to some mode of revising the sentence." If therefore, the principles as we have stated them of *res adjudicata*, when applied to the parties to an appeal or to the parties to a cause necessarily conflict with the rights of third persons subsequently made parties to be heard in repelling the facts assumed, or appearing theretofore in the cause, or to be heard upon the matter of law involved, and such a decision so made even by the appellate court, necessarily does injustice and wrong, to persons not parties to the cause, when the appellate court rendered such decision, these principles of *res adjudicata*, however inexorable they may be as a rule, must of necessity yield to the extent of not depriving such third persons, who were not then parties to the cause or appeal of this right to be thus heard, when subsequently made parties, and when heard to the extent of doing such third persons no wrong; but they will yield in such cases, no farther than is absolutely necessary to avoid such wrong and injustice to the third persons.     They should in no case yield any further because, the only necessity or propriety in thus yielding in such case at all is, simply to avoid such wrong and in justice to such third persons.   So far as the parties to the cause are concerned, when the case was decided by the court below, and so far as the appellants, whether parties to the cause before the appeal or not are concerned, they can not be again heard to complain of the decree, ot either the inferior or Appellate Court, no matter what wrong or injustice they may suffer from them. They have had their hearing or an opportunity to be heard and must abide by the decision, for there must be an end to litigation.

Applying these principles to this cause now before us, the decree of June 21, 1876, so far as it was affirmed by the decree of this Court of December 14, 1878, must be carried out and enforced in all respects, where it has not already been executed, excepting only that portion of said decree, that orders the sale of a lot of one-half of an acre adjoining the town of Frankford, sold by Samuel C. Ludington, to J. H. Leps; and that portion of said decree, which orders the

sale of a lot of twenty-nine acres near the town of Frankford, sold by said Ludington to Pat Shannacy. This part of said decree is absolutely null and void; for neither Leps nor Shannacy, were parties to this cause, nor were either of them appellants from said decree, nor has Shannacy since been made a party. Leps, was for the first time, made a party to the cause more than eight months after this decree was rendered; that is in February 27, 1877. Neither he nor Shannacy are mentioned in the original bill, or in the first amended bill filed before the entry of this decree, and so far as the pleadings in the cause show, they have no sort of connection with any of the matters in controversy in the cause, and were not even served with the process of this Court to answer the appeal.

Lands of H. P. Brown, John Pickering, Joseph W. Hanna and Garland Brown, were also ordered to be sold by the said decree, and they too were then no parties to said cause; and were therefore at that time, not bound by the said decree. But all these parties united as appellants in the appeal from this decree, and as we have shown they thereby became bound by this decree, so far as it was affirmed by the decree of this Court rendered December 14, 1878. Therefore, with the exceptions of those portions of said decree, directing the sale of such lands of Leps and Shannacy, this decree, so far as it was affirmed by the decree of this Court, must be literally executed where any portion of it remains unexecuted; because it is obvious, that no portions of this decree other than these, are prejudicial, that is do any wrong or injustice to any of the parties named, other than said appellants, who have since been made parties to this cause. Of course they can not be prejudiced by that portion of the decree, which ordered the sale of the lands of those appellants and of other persons, who were parties to this cause. They are obviously interested in having said lands sold, thereby tending to relieve their own lands from sale. Nor are any of these new parties prejudiced by the Court's determining the amount due on the numerous judgments against Samuel C. Ludington; for since then these new parties have had an opportunity to be heard with reference to the amount due on these numerous judgments, by being made parties to this cause,

None of them, though most of them have filed answers, make any sort of objection to the amount found due on these several judgments named in said decree, as thus ascertained by this Court. Neither have their counsel in this Court, even suggested, that the amount due on these judgments was not properly ascertained in said decree.

We must therefore assume, that it is admitted by all the present parties to this cause, that the amount due on all these judgments named in said decree, is correctly ascertained in said decree; and therefore, that no sort of prejudice can be done any person by the enforcement of said decree, so far as affirmed by this Court, with the exceptions of the parts we have indicated, excepting only said appellants from said decree, and the parties to this cause, when the said decree was rendered, and as to them, these matters are *res adjudicata*, and they cannot now be heard to complain.

So too, the decree of June 25, 1877, which was affirmed by the decree of this Court of December 14, 1878, must so far as it remains unenforced, be enforced now with the exception only of the portion thereof, that fixed the amount of the judgment in favor of Michael Fleshman, at two thousand two hundred and thirty-two dollars and forty-three cents, with interest from June 1, 1876. This amount was, by a clerical error, nine dollars more than Michael Fleshman's entire judgment; and in his answer he admitted, that the judgment was to be credited by two hundred and thirty dollars, which he had received; and it was also proved, that it ought probably to be credited with a further amount received on it by Michael Fleshman. Now though all the parties to this cause named in the original bill, and first amended bill, but not those named in the second amended bill, were bound by this decree thus fixing the amount of this Fleshman judgment erroneously; and though the persons who appealed from this decree not being such parties to this cause, were by the affirmance of this decree by this Court on December 14, 1878, bound by it as *res adjudicata*, yet new parties to this cause made since this affirmance are not bound by this decree as *res adjudicata*, and have a right to have it corrected now, so far and so far only, as it is prejudicial to their rights and does them wrong.

We have seen, that no part of this decree except that portion of it, which thus erroneously fixes the amount due on this Fleshman judgment, is prejudicial to their rights, as they have been made to appear, since they were made parties to this cause and therefore, with this single exception, the unexecuted parts of this decree must be enforced.  And an enquiry should be made by a commissioner of the circuit court as to what credits should be given on this judgment of Michael Fleshman.

This decree is also complained of as erroneous and prejudicial to purchasers of the lands of S. C. Ludington, not parties to the cause when this decree was rendered, and not appellants from it, because it was rendered without regard to the effect which would be produced on such purchasers by increasing the burden their lands would have to bear in paying the docketed judgments by this decree directing the undocketed judgments to be paid out of the unsold lands. This question was fully and maturely considered by this Court, when this case was formerly upon us; see 14 W. Va. 367.   The conclusions we have reached on this point were: "First, as between the judgment, creditor and debtor, the statute requiring the judgment to be docketed has no application or force.  Second, section 5 of chapter 139 of the Code, gives a positive express lien of a judgment against all the lands, of which the debtor shall be possessed, or in which he should be entitled, at or after the date of such judgment; or if it was rendered in court, at or after the commencement of the term, at which it was rendered; and such lien continues until it is in some legal manner discharged.   Third, when various judgments are rendered against a debtor, and the junior judgments are docketed and the senior judgments undocketed; and in this state of thing the debtor conveys a part of his land to a purchaser for a valuable consideration, without notice of the undocketed judgments, and the docketed judgments are not discharged, the lien of the lands and judgments must be discharged out of the proceeds of the unsold lands; although the effect must be to require the holders of the docketed judgments, to resort in whole or in part, to the land so conveyed for the satisfaction of these judgment liens.   Fourth, section 7, of chapter 130 of Code of

W. Va., was enacted for the protection of the purchaser for valuable consideration without notice of judgments; but that protection only extends to the lands so conveyed to such purchaser, it being liable to the satisfaction of judgments docketed according to law and to such judgments only."

We have again carefully considered these questions and have reached the same conclusions. The reasons for these conclusions formerly stated in 14 W. Va. R. p. 307, &c., are we think conclusive. So that the decree of June 25, 1877, is prejudicial to the parties to this cause, only in the particular we have stated.

The decree of November 11, 1879, first refuses to restrain the funds in the hands of the commissioners from being applied to the payment of the Fleshman judgment, till further orders. This was erroneous, as the funds ought not further to have been applied to the payment of that judgment, till the court had ascertained what credits should have been placed upon it, including the two hundred and thirty dollars paid to him, Fleshman, by S. C. Ludington, and admitted in his answer, and any other amount paid to him by S. C. Ludington, as well as the amount paid on this judgment by the commissioners of the court, and also because the clerical error in the decree of June 25, 1877, of nine dollars, in fixing the amount of this judgment. This decree then, by consent of parties, directed the commissioners not to pay over to said Fleshman, any money till he shall have given a certain bond with security, and with a certain condition; this of course was not erroneous. This decree then orders said commissioners, to pay over the balance due on the Fleshman judgment, as stated in the decree of June 25, 1877, after crediting the amount paid him by these commissioners and correcting a clerical error in said decree. This was erroneous, as this Fleshman judgment before it was ordered to be paid, ought to have had placed on it other credits. This decree next orders Joel McPherson, to refund eighteen dollars and six cents, which the commissioners had over-paid him. There was of course no error in this. This decree next orders this cause to be referred to a commissioner, among other things to settle the order in which lands purchased of S. C. Ludington, which had not already been sold in this cause, and

which were bound by the liens of the judgment against S. C. Ludington, should now be sold to pay what might remain of said judgments unsatisfied. This was erroneous. In the first place, as we shall presently see, it was not proper to make any order of reference in said cause at that time, as all the proper parties were not then before the court; and secondly, the order in which many of these lands were to be sold had already been determined by the decree of June 21, 1876, affirmed by this Court and so far as this order was determined by this decree; it would have to be maintained as *res adjudicata ;* and all the lands named in said decree sold, excepting only the lands of J. A. Leps, and Pat Shannacy, who were not parties to the cause when this decree was rendered, and were not appellants from this decree.

The next portion of this decree stayed and suspended until and unless further ordered, so much of the decree of June 25, 1876, as directed the sale of certain lands conveyed by S. C. Ludington, to F. H. Ludington, James H. Leps, John Pickering and to James W. Hanna. This was erroneous, so far as it suspended the sale of the lands conveyed to F. H. Ludington, John Pickering and James W. Hanna. They were appellants in the appeal from said decree, and it was in this respect affirmed by this Court, and it was as we have seen as to them, *res adjudicata.* So far from suspending the sale of their lands, ordered by this decree of June 21, 1876, the court ought to have ordered the commissioners of sale to proceed to sell the same; but so far as the sale of the land of James H. Leps, was concerned, as well as the lands of Patrick Shannacy, which were ordered to be sold by said decree of June 21, 1876, the court ought to have suspended the sale till the further order of the court, as these persons were not parties to this cause when this decree was entered, and were not appellants from the said decree. And lastly, the court, by this decree, on motion of F. H. Ludington, ordered the sale of such of his lands as have been already sold, under said decree of June 21, 1876, and which sales had been reported and confirmed, were then again ratified and confirmed. This was not erroneous, but the court ought to have gone further and ordered the commissioners to make a deed to the purchaser or purchasers for these lands, as any

deed theretofore made to them, if made before the affirmation of said decree by this Court, would have been invalid or at least imperfect as made when F. H. Ludington, was no party to the cause.

We will now proceed to show, that this cause was not then in a condition to justify the court in referring it to a commissioner, to ascertain the order in which the lands which had been owned by S. Ludington, should be subjected to sale to pay the judgment against him remaining unpaid. To do so we must consider, what was then the real condition of this cause.

The plaintiff in his original bill made about forty-five parties defendants; of these some thirteen were purchasers of lands from Samuel C. Ludington, which the bill sought to subject to the payment of numerous judgments. The persons in whose favor these judgments were rendered, being also defendants named in this bill. This original bill on its face alleged, that the judgment debtor had also since the rendition and recordation of these judgments conveyed prior to the sales and conveyances named in the bill, to various parties not named, other lands, which were bound for the payment of the plaintiff's and other judgments; and if it should become necessary to resort to these lands so sold, in order to satisfy the plaintiff's judgment lien, he claimed the right to amend his bill, making these last mentioned vendees parties to this suit, and their lands liable to the payment of the debts of Samuel C. Ludington. This bill was obviously liable to demurrer for want of the proper and necessary parties to such a bill, and even though not demurred to, it was the duty of the court to have refused to entertain the bill in this defective condition, or to enter any decree referring it to a commissioner as asked, till the obvious defects in the bill as to parties and as to the allegations in it, were remedied by amending this bill. These are fundamental principles governing courts of equity, which were violated in this bill, and in the proceedings and decrees rendered by the court upon it.

These principles are thus stated in Story's Pleading § 72 9th edition revised by Gould p. 67. "One of these is a principle admitted in all courts upon questions affecting the

suitor's person and liberty, as well as property, namely, that the rights of no man shall be finally decided in a court of justice, unless he himself is present, or at least unless he has had a full opportunity to appear and vindicate his rights. Another is, that when a decision is made upon any particular subject, the rights of all persons, whose interests are immediately connected with that decision and affected by it, shall be provided for, as far as they reasonably may." And hence, as a general rule in equity, subject to certain exceptions not extending to such a case as the one before us; "all persons materially interested either legally or beneficially in the subject matteer of a suit, are to be made parties to it, either as plaintiffs or defendants however numerous they may be so that there may be a complete decree *which shall bind them all.*" See page 68.

These elementary principles, were obviously violated in the filing of this bill and in the action of the circuit upon it. And it has had, as might have been reasonably expected, most mischievous results by the rendition of decrees in the cause not binding on parties materially interested in the subject matter of the suit; and · has led to all the confusion, delay annoyance and injustice, which the rendition of such decrees will almost certainly produce.

It is obvious, that those unnamed persons in the bill, whose lands the plaintiff expected ultimately to make liable for his and other judgments against Samuel C. Ludington, had precisely the same interest in the subject matter of this suit as the purchasers from Samuel C. Ludington, whom the plaintiff chose to make defendants in his original bill; and obviously the court ought to have required all of them to be made defendants before it made any decree, which if enforced, would have directly affected their rights. Had it done so, this suit would long since have terminated. The principal embarrassments in it, having resulted from the neglect of parties and of the court, to enforce the observance of the fundamental principles of a court of equity, to which I have referred. As a result of this negligence and violation of fundamental principles, no less than three amended bills in this cause, making a portion of the omitted persons parties, have already been filed, and a fourth amended bill must yet be filed.

The court disregarding these fundamental principles, referred this cause to a commissioner and he reported the names of no less than six of these persons, who had bought lands of Samuel C. Ludington, but who had not been made parties, whose lands the commissioner states, were bound for these judgments against S. C. Ludington.   The commissioner made no sort of distinction between these six persons and those who had been made defendants, and bought land of S. C. Ludington; and he probably supposed, that these six persons had been made defendants, as they obviously ought to have been.   The court probably supposing they were parties, decreed the sale of lands of these six persons to pay judgments against S. C. Ludington, and some of these lands have been sold by the commissioners, the sales confirmed, deeds made and the moneys distributed.   All these acts were obviously null and void, and except as far as they have been corrected, will have yet to be corrected.   Four of these persons, by taking appeals from the decree directing the sale of these lands, corrected as we have seen, most of the errors in this decree, so far as it was affirmed by this Court.   When these four persons took this appeal it is reasonable to suppose, that their counsel believed that they were parties to this cause before this decree was rendered.   This Court granted the appeal doubtless without looking over these names of the defendants, exceeding fifty in number, to discover whether these four parties asking an appeal were defendants.   Taking it for granted as well they might, that they were among the defendants and bound by the decree they sought to revise.

The cause was heard by this Court on its merits, as regards these four persons, after elaborate argument by their counsel without the attention of this Court being called to the fact, that they were not defendants in this cause when this decree was rendered.   When the cause was remanded to the circuit court, these appellants as the decree of November 11, 1879, on its face shows insisted, that not being defendants they were not bound by the decree of this Court on the merits of the cause; and demanded it to be again considered by the circuit court.   Thus warned of the annoyances, which necesessarily arise from a breach of these fundamental principles of a court of equity, to which I have referred, the circuit court

ought not again to have referred this cause to a commissioner, until it had the bill amended and all proper defendants made so that any decree it might base on this report of the commissioner when made, might bind all persons materially interested in it.   The court ought therefore, before this or any other order of reference was made, to have required the plaintiff to amend his bill and made Patrick Shannacy, a party defendant and also all other persons whose lands, either he or any other judgment creditor of Samuel C. Ludington, desired to have subjected to sale for the payment of any of the judgment-liens against said Ludington, and not then parties to the cause.

After this bill was thus amended and the said cause, by the service of the summons on these new defendants was ready for hearing on this amended bill, and after it was actually heard on such amended bill and not before, an order if reference should have been made, and such order of reference will yet, after the cause is in this condition have to be made. This order of reference, ought not when made, to be as comprehensive in some respects, as was the order in this decree of November 11, 1879.   The first clause of this order was such as must yet be made; but the second clause is too comprehensive.   The court now has nothing to do in settling the order, in which the lands aliened and conveyed by Samuel C. Ludington, and which were embraced in the decree of June 21, 1876, are to be sold, excepting only the land of J. II. Leps and Patrick Shannacy, named in said decree; as to whom said decree was a nullity.

But with this exception this decree is *res adjudicata* with reference to the lands, named in it to be sold, and the order in which the lands named in it with these two exceptions, are to be sold.   The commissioner should therefore be only directed to ascertain and report an account showing, all the lands aliened and conveyed by Samuel C. Ludington, other than the lands decreed to be sold in this decree of June 21, 1876, but including the lands of J. H. Leps and Patrick Shannacy, so decreed to be sold, but improperly, and all other lands aliened by him not named in said decree of June 21, 1876; and that are bound by the liens of the judgments against S. C. Ludington, or any of them, which were aliened

to parties in this cause; and that he give the order in which said lands must be subjected to sale to the satisfaction of said judgments against S. C. Ludington.   And this order of reference when made should also include an enquiry, whether John Littleton, A. M. Fulwider, Martha Cochran or Garland Brown, alienees of Samuel C. Ludington, of portions of the land he purchased of W. W. Shields, have paid any judgments against said Shields, which were liens on the land they bought, or had paid any other liens on said lands existing at the time said lands were purchased of said Shields, by said S. C. Ludington; and whether any of them, by virtue of such payments, are entitled to be substituted to the benefit of such liens, in whole or in part, and the amount and date of such payments in money or otherwise so paid on such liens.   The court in view of the fact, that the last report of the commissioner shows, that he was ignorant as was the profession generally therein of the law and rules, which should govern him in settling the order in which said lands aliened by S. C. Ludington, to different purchasers, must be hereafter subjected to sale to pay the judgments against said S. C. Ludington, should lay down rules for his guidance on this subject; and that these instructions may be given correctly, we will now consider the law governing in such cases.

There was formerly much controversy in Virginia on this subject.   This controversy was attempted to be settled in Virginia by the passage of what is now the 9th section of ch. 139 of Code of West Va. p. 666 which still remains the law there as well as here.   This section is: "When real estate liable to the lien of a judgment, is more than sufficient to satisfy the same and it, or any part of it, has been aliened as between the alienees for value that which was aliened last shall in equity be prior liable and so on in the other successive alienations until the whole judgment is satisfied. And as between alienees who are volunteers under such judgment debtor, the same rule as to order of liability shall prevail.   But any part of such real estate retained by the debtor himself shall be first liable to the satisfaction of the judgment."

Since the passage of this statute, there has been comparatively little controversy or dispute about the rule, which is

to govern the order in which the lands of different pur-
chasers of a judgment debtor's lands, are to be subjected to
sale for the payment of these judgment-liens. Whatever
controversy there has been, has been settled in Virginia by
the decision in the cause of *Harman et als.* v. *Oberdorfer
et als.*, 33 Gratt. 497. I have examined that case carefully
and fully concur with the court of appeals of Virginia, in
the construction of the above section of our and their law;
and in the reasons therefor as stated in the opinion of Judge
Burks. The rules governing the settling of the order in which
the lands of purchasers from judgment debtors are to have
their lands subjected to sale, are as deduced from this case:

First: If two deeds bearing different dates are acknow-
ledged for recordation at the same time, in the absence of
any direct proof as to the time the several deeds were deliv-
ered, it would be presumed each was delivered at the time
of its date; and not that they were both delivered at the
time of the date of their acknowledgments for recordation.

Second: A person becomes the alienee of land under the
true construction of the above section, as soon as he makes a
valid contract of purchase; a contract which a court of equity
would specifically enforce. That is either a written contract
or a verbal contract, accompanied by the delivery of posses-
sion. And if the contract be verbal, the date of the aliena-
tion will be not the time the contract was made, but the time
that possession was taken by the purchaser under the contract.

Third: If the first alienee of a portion of the lands liable
to judgment-liens fails to put his deed of record, and a sub-
sequent alienee, who bought another portion of said lands
liable to judgment-liens, puts his deed of record, still the
lands of such last alienee must be held liable for such judg-
ment-liens before the land of the first alienee. The reason
for the last of the above rules is, that the 5th section of ch.
74 of the Code of West Virginia, p. 474, declaring "that
every deed, &c., shall be void as to creditors and purchasers
for valuable consideration without notice, until and except
from the time it is duly admitted to record," does not apply to
purchasers of different parcels of land from the same vendor,
but only refers to "subsequent purchasers" of the same sub-
ject as that embraced in the instrument declared void.

Of course the decree of June 16, 1880, must be reversed, because based on the order of reference in the decree of November 11, 1879, which must as we have seen be set aside.   The commissioner's report under it was imperfect as well as the decree of June 16, 1880, based on this report. To allow it to stand, even when seemingly right, would be to embarrass the cause as it is not binding on all parties interested in it, they not all being before the court.   The cause must necessarily be recommitted to the circuit court of Greenbrier, for further proceedings.

There is one view of the appellant's counsel which I have failed to notice, that is that the decree of November 15, 1875, decided, that the deed from S. C. Ludington, to A. W. Ludington, trustee for Mrs. E. T. Ludington, "is not a voluntary conveyance but is founded upon a valuable consideration, and is in that regard a valid and sufficient deed." This decree it is claimed, was never appealed from and therefore never reversed.   But while the false reasoning contained in the decree of June 25, 1877, is not in accordance with this portion of this decree, yet it was not in opposition to it; but was a waiver of a decision of this point in form.   But the decree itself, which declared that this land was to be treated and regarded as unsold land, was in effect an overruling in this respect of this portion of said decree of November 15, 1875, and without this could have been properly done by the court without a bill of review being filed is now immaterial; for an appeal from the decree of June 15, 1877, necessarily brought before this Court a review of the above portions of the decree of November 15, 1875, when this Court sustained this decree of June 25, 1877, in this respect, it necessarily overruled the above portions of the decree of November 15, 1875, if such portions of it are to be really regarded as it is claimed, that this deed for this four hundred and fifty acres of land was not made with intent to delay, hinder and defraud creditors.

In the conclusions we have reached much less wrong results, than might reasonably have been expected in a case of this character, from the circuit court proceeding to decide the cause in some respects and entering decrees without having the necessary parties before the court, and when they were

brought before the court, necessarily rendering decrees to some extent, in conflict with such previous decrees, which were binding on some parties in the cause and not on others having just the same interest.   The principal wrong in this cause, cannot justly be attributed to this fruitful source of mischief.   After this cause was formerly remanded to the circuit court of Greenbrier, F. H. Ludington, one of the parties who had united in the former appeal to this Court proved, that certain lands which the circuit court had decreed to be sold by the decree of June 21, 1876, and which in this respect had been affirmed by this Court, had been sold to him by a parol contract more than twenty years ago.   He had paid all the purchase-money at that time, and had been in actual and open possession of the land from the time of his purchase, though he had but recently got a deed for the same which was recorded.   Now it is obvious, that as the law is now settled in this State and in Virginia, this land ought not to be decreed to be sold to pay the judgments recently had against his vendor, S. C. Ludington, because by the decisions in *Pack* v. *Hansburger et al.* 17 W. Va. R. 313, and *Snyder* v. *Martin et al.* 17 W. Va. R. p. 276, these lands could not be held liable for the payment of any judgments rendered against the vendor, after said parol contract for their sale and the possession under such contract was taken, as was decided in these cases by this Court on December 11, 1880.   And then again, even if these lands could have been held liable for these judgments against S. C. Ludington, the time of their alienation according to the decision of *Harman et als.* v. *Oberdorfer et als.* 33 Gratt. 497, would be the time he purchased the lands by parol and took possession of them, and not the date of his deed nor the time of its recordation; but unfortunately for F. H. Ludington, this decision was not rendered till September 23, 1880.   So that when this case was before the circuit court of Greenbrier prior to this former appeal none of these West Virginia or Virginia cases had been decided.   And F. H. Ludington and his counsel, if then he had any counsel, not knowing the law as laid down since in these cases, failed to prove in the cause then, that he had bought these lands by a parol contract and had possession of them long before the deed to him was made and recorded.

No doubt both he and his counsel, if he then had any, regarded this evidence as immaterial. Imagining no doubt, that the date of the deed, not of its recordation, would be held to be the true time of its alienation, and that it would be liable to all judgments against Ludington prior to the recordation of this deed. Of course the circuit court as the case was presented to it, held these lands liable to sale for the payment of the judgments against F. C. Ludington, and took the date of the deed as a matter of course as the date of the alienation of the land, and accordingly decreed its sale. And this Court, of course as the case was presented to us, affirmed this decree in this respect; no question whatever having been raised in this Court as to the propriety of this decree in this respect. The misfortune then of F. H. Ludington, really resulted from his ignorance of the law at that time, an excusable ignorance perhaps which prevented him from proving facts, which he could easily have then proven, and brought into the record and which would have saved his lands from liability to sale in this cause. But being bound by the affirmance of this decree for the sale of his land, by this Court in this cause in which he was an appellant, it is now too late to get rid of the effects of this decree of sale by now proving these facts.

The decree of the circuit court of Greenbrier of November 11, 1879, must for the reason, we have assigned be in part reversed and in part affirmed, and the decree of said court of June 16, 1880, must for the reasons assigned be reversed and the appellants must recover of the appellees, their costs in this Court expended, and this Court must enter up such a decree as is in accordance with the views we have expressed; and the cause must be remanded to the circuit court of Greenbrier to be there proceeded with further according to the principles laid down in this opinion and further according to the principles governing courts of equity.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE AFFIRMED IN PART AND REVERSED IN PART. CAUSE REMANDED.